*Delphean and Katherine SELLS*
Petitioner-Appellants
*vs.*
*ROUGH ROCK COMMUNITY SCHOOL*
Respondent-Appellee

In the Supreme Court of the Navajo Nation

No. SC-CV-32-04

March 16, 2005

Thomas Murphy, Esq., Gallup, New Mexico, for Appellants.

Lawrence Ruzow, Esq., Window Rock, Navajo Nation, for Appellee.

Before FERGUSON, Acting Chief Justice, and J. BENALLY and BEDONIE, Associate Justices (by designation).

FERGUSON delivered the opinion of the Court, which J. BENALLY joined. BEDONIE filed a separate opinion concurring in the judgment.

This case concerns the Navajo Preference in Employment Act and its application to short term employment contracts. We affirm the Navajo Nation Labor Commission.

## I

This is an appeal from a consolidated case before the Navajo Nation Labor Commission (Commission). Rough Rock Community School hired Katherine Sells and Delphean Sells (the Sells) under short term employment contracts to teach students weaving and beadwork. The contracts do not reference the Navajo Preference in Employment Act (NPEA). The contracts set the "Dates/Times of Service" as August 26, 2002 to December 18, 2002. They also define the Sells' work week as Sunday through Wednesday, 4 p.m. to 6 p.m., that is, two hours a day for four days a week. They also limit the total number of work days to forty-eight days in a clause titled "total days NTE ('not to exceed')." Katherine's contract sets the rate per hour at $15.00. Delphean's contract sets the rate at $12.00. Both also state that the total hours were not to exceed eight hours a week. The total encumbrance under Katherine's contract is set at $1,440. The total encumbrance for Delphean is set at $1,152.

Despite the contracts' reference to eight hours a week, the Sells actually worked significantly more than that. The Sells began claiming more time in the first payroll cycle. The Sells testified that two hours was insufficient due to the nature of their instruction, student tardiness, dinner, and general student distractions. The Sells' duties included escorting the students to the cafeteria and, if they chose, to eat with the students, which, with the other factors, meant that they had to work more than the two hours each day to fulfill their duties. Between August and October, school officials met many times with the Sells, and explained in English and Navajo that if they exhausted the time limit set in the contracts they would exhaust the encumbrance amounts. However, Executive Director Charles "Monty" Roessel authorized an additional thirty minutes each work day, though the encumbrance amounts in the contracts remained the same.

School officials at some point discovered that the Sells had exceeded the amount of hours and the encumbrance amounts in the contracts. They considered the contracts fulfilled, and an official verbally informed the Sells that the contracts had expired as of October 23, 2002. At that time, Delphean Sells had worked a total of 136.5 hours and had been paid $1,638. This was 40.5 hours more than the original contract and $486 more than the encumbrance. Katherine Sells had worked 137.5hours and had been paid $2,062.50. This was 41.5 more hours and $622.50 more than the encumbrance. The Sells filed a claim under the NPEA.

The Navajo Nation Labor Commission ruled against the Sells. It concluded that Rough Rock fulfilled its obligations under the contracts, and more, when it paid the Sells for the time actually worked. According to the Commission, the contracts only required Rough Rock to employ the Sells for a maximum of ninety-six hours within the August to December time period, and it did so. The Commission concluded that when the Sells exceeded that time, Rough Rock appropriately ended the employment, and compensated the Sells for the time beyond the contracts, therefore ending its responsibility. The Commission

concluded as a matter of law that Rough Rock's notice that the contracts expired was not "adverse action" that required written notification of 'just cause" under 15N.N.C. § 604(B)(8) (1995). Even if "adverse action," the Commission concluded that the exhaustion of the encumbrance amount was "just cause" for terminating the employment. The Commission further ruled that Rough Rock's failure to include a reference to the NPEA did not justify damages to the Sells. The Sells appealed the decision to this Court.

## II

The issues in the case are 1) whether the notice to the Sells that their contracts had expired was "adverse action," and 2) whether Rough Rock's failure to explicitly reference the NPEA in the contracts justifies the award of damages.

## III

This Court reviews decisions of administrative agencies, including the Labor Commission, under an abuse of discretion standard. *Jackson v. BHP Minerals*, 8 Nav. R. 560, 568 (Nav. Sup. Ct. 2004). Among other things, the Commission abuses its discretion when it makes an erroneous legal conclusion. *Id.* The meaning of a statute is a legal conclusion for which we give no deference to the Labor Commission's decision. *Id.* at 569. Therefore, we review whether there was "adverse action," "just cause," or whether the lack of an explicit reference to the NPEA in an employment contract justifies damages *de novo*.

## IV

### A

The Navajo Preference in Employment Act states that "[a]ll employers shall not penalize, discipline, discharge nor take any adverse action against any Navajo employee without just cause." 16 N.N.C. § 604(B)(8) (emphasis added). "Adverse action" is not defined, requiring this Court to determine its meaning. The Labor Commission did not provide a definition, but merely stated that Rough Rock's notice to the Sells was not "adverse action."

Whether an "action" is "adverse" depends on the specific employment relationship. The Sells urge that this Court follow federal case law that defines "adverse'" in the employment context as "if it results in some tangible, negative effect on the Plaintiff's employment." We hereby adopt that standard as consistent with the stated purpose of the NPEA, *see* 15 N.N.C. § 602(5) (1995) (stating one purpose as "[t]o protect the economic self-sufficiency of Navajo families"), and as consistent with Navajo Common Law, *see Tso v. Navajo Housing Authority*, 8 Nav. R. 548, 557 (Nav. Sup. Ct. 2004) (interpreting ambiguous term in NPEA consistent with Navajo Common Law). However, we add further that the "action" in this context must be an affirmative act by the employer that terminates *ongoing* employment. The mere notice to an employee that a contract has been fulfilled, in the absence of contractual language requiring automatic

renewal, though "adverse", is not "action" that triggers the requirement to give written notification of "just cause." The Navajo Common Law emphasis on keeping one's promises in a contract, *see Ben v. Burbank*, 7 Nav. R. 222, 224 (Nav. Sup. Ct. 1996), means that, absent a direct prohibition on employment contracts, we will expect both employer and employee to fulfill their obligations under a contract.[1] The general question in this case is then not whether the ending of the employment relationship was "adverse," but whether it was "action." The specific question is whether Rough Rock ended the relationship before it fulfilled its contractual obligation to employ the Sells.

B

The Sells argue that the contracts required the school to employ them until December 2002, and not, as the Labor Commission concluded, only until the encumbrance amount ran out. According to the Sells, the contracts were for a specific "term," not a specific amount of money, and therefore, absent "just cause," the school could not terminate their contracts until December 2002.[2] As the school ended the contracts based on the exhaustion of the money, the Sells claim that the school committed "adverse action."

[1] The Sells assert that "term contracts," in which the employer agrees to employ a worker for a limited period of time, are invalid under the NPEA. According to the Sells, employers improperly use term contracts to circumvent the "just cause" requirement by limiting employment to a set time, after which the employee may be let go without the need to supply written justification of "just cause." The NPEA does not discuss employment contracts, whether limited by a specific term or not, and therefore they are not explicitly prohibited. However, we do not mean to endorse all term contracts. Absent evidence that the employer intentionally uses such contracts to avoid the "just cause" requirement, such as setting up unnecessarily short terms for the same employees in a series of contracts, we will not set aside an employment contract because it is allegedly barred by the NPEA. There is no evidence in this case that Rough Rock used short term contracts improperly, and we therefore move forward in our review of the actual terms of the contract to see if the notice that the Sells fulfilled the contracts was "adverse action."

[2] One problem with the Sells' argument is that the payments actually made by the school are what the Sells would have received had they worked until December 2002. Assuming the Sells are correct, and the "term" of the contract was sixty-eight days (August 26, 2002 to December 18, 2002, Sunday through Wednesday), not forty-eight days, then they should have been paid for 136 hours under the contract (68 days x 2 hours=136 hours). The result would have been the same, as the school actually paid them for 136.5 and 137.5 hours respectively. The Sells never provided a satisfactory response in their brief or at oral argument describing what damage they suffered by not working the full time, except the claim that they were denied the opportunity to work with the children for the full semester. There is the possibility that this case is therefore moot, as no actual dispute might exist. *See Bizardi v. Navajo Nation*, 8 Nav. R. 593, 597 (Nav. Sup. Ct. 2004) (discussing mootness). As the Sells claim some damage beyond the mere contractual amount of compensation, however, we consider their arguments concerning "adverse action."

Rough Rock claims the contracts required it to employ the Sells for a total of ninety-six hours during the August to December term, that is, two hours a day for forty- eight days, and that they exhausted that time by October. The School claims that the Sells fulfilled their contracts when they worked the ninety-six hours, exhausting the encumbrance amounts, and therefore the school did not commit any "adverse action" when it ended their employment. The crux of the school's argument is that the contracts were for a specific amount of time, ninety-six hours, which corresponds to a set amount of money, the encumbrance, and once those amounts of time and money are exhausted, the notice to the Sells that the contracts had been fulfilled was not "adverse action."

While we agree that there would have been "adverse action" if the contracts required employment until December 2002, we do not believe the contracts require that absolute term of employment. The Sells focus on one part of the contracts in isolation: the reference to August to December. However, in *Office of Navajo Labor Relations ex rel. Office of Navajo Labor Rel. ex rel. Bailon v. Central Consolidated School Dist. No. 22* we applied a rule of contract construction that requires that we give meaning to all contract provisions. 8 Nav. R. 501, 505–06 (Nav. Sup. Ct. 2004). We stated that we would not read a contract in a way that would make explicitly stated provisions meaningless. *Id.* We must therefore interpret the contracts with that rule in mind.

Here, the term emphasized by the Sells must be read in the context of the surrounding provisions concerning the total number of hours per day, days per week, and, most importantly, the maximum number of days, and their relationship to the ultimate encumbrance amount. When read together, the August to October term is not absolute, but is limited by the intended hours, days per week, and maximum number of days. It is clear that the interconnected provisions are tied to the ultimate encumbrance amount, meaning that the Sells were to work only the amount of time that would exhaust the money set aside for the contracts. The total encumbrance under Katherine's contract was $1,440. When calculated out, forty-eight days times two hours a day times $15.00 an hour equals the $1,440 encumbrance. The total encumbrance for Delphean was $1,152. When calculated out, forty-eight days times 2 hours a day times $12.00 an hour equals the $1,152 encumbrance. The August through December term is then limited by the surrounding provisions, and Rough Rock therefore did not terminate the employment before the contracts expired, but gave notice that Rough Rock had fulfilled its contractual obligations. Rough Rock also paid the Sells for any time school officials erroneously allowed the Sells to work beyond the contracts' explicit restrictions. Under these circumstances, the Labor

Commission correctly ruled that there was no "adverse action."[3]

The Sells also contend that Rough Rock violated the NPEA when it failed to include a provision in the contracts indicating the NPEA applied. The NPEA requires an explicit provision that the parties will agree to abide by the NPEA in "[all] transaction documents, including without limitation... contracts." 15 N.N.C. § 609(A) (1995). That section of the NPEA also states that "[w]ith respect to any transaction document which does not contain the [required provision], the terms and provisions of [the NPEA] are incorporated therein as a matter of law and the requirements of the Act shall constitute affirmative contractual obligations of the contracting parties." *Id.* The Sells suggest that the failure of Rough Rock to include the NPEA provision justifies independently an award of damages.

Though Rough Rock did fail to include an explicit reference to the NPEA, this omission does not independently justify damages. The intent of this NPEA provision appears to be to foreclose an argument by a contractor or lessee that it does not have to follow the NPEA because it did not explicitly agree to do so. *See* Navajo Labor Investigative Task Force, Report to the Navajo Nation Council Regarding the Proposed Amendments to the Navajo Nation Preference in

---

3 Though not asserted by the Sells, we questioned both sides at oral argument whether the extension of the daily work hours by Executive Director Charles "Monty" Roessel and the continued payment of the Sells after the exhaustion of the encumbrance amount might have modified the contract terms. The Sells did not adopt this argument, and, even if we were inclined to consider it further, *see Benally v. Mobil Oil Corp.*, 8 Nav. R. 378, 401–02 (Nav. Sup. Ct. 2003) (declining consideration of arguments not raised in lower tribunal except in specific circumstances), the continual reminders by school officials to the Sells that working more hours meant that the encumbrance amounts would be exhausted faster weighs against any conclusion that the parties agreed to modify the contract. Further, the erroneous allowance of more hours beyond the explicit contractual restrictions does not, by itself, extend Rough Rock's liability beyond the agreed upon term.

Employment Act of 1985 at 65-67 (1990)[4] This might occur when a non-Indian company leases land from the Nation or a member or provides services to the Nation or a member. The company might argue that the NPEA does not apply absent its affirmative consent in the lease or contract. *See Central Consolidated*, 8 Nav. R. at 506–07 (discussing Section 609 and its relationship to jurisdiction over contractors). This provision, however, does not appear to generate a separate punishable violation justifying damages to an employee. The Commission is correct that, under Section 609, even without an explicit provision, the NPEA applies as a matter of statute and is incorporated into any contract. There is therefore no real damage to the Sells, as the protections afforded them under the NPEA apply whether or not there is an explicit contractual agreement to follow them by Rough Rock. Absent language in the NPEA indicating that a violation of Section 609 independently justifies damages even if in the absence of "adverse action," we decline to read any such meaning into the statute.

## VI

Based on the above, we AFFIRM the decision of the Navajo Nation Labor Commission.

## CONCURRING OPINION

Although I concur in the judgment, I write separately because I disagree with the Majority's approach to this matter. This is a simple case, and the complex analysis applied to it is not necessary.

4  We have previously used the Task Force Report to assist us in interpreting the NPEA, *see Dilcon Navajo Westerner v. Jensen*, 8 Nav. R. 28, 36, (Nav. Sup. Ct. 2000), and do so again because of its direct relationship to the 1990 amendments to the act. The Task Force was directed through a 1989 Executive Order to review proposed NPEA amendments and to receive input from employers and the general public. *See* Report at 6-9. In its Report, the Task Force recommended various amendments to the NPEA, including what became Section 609. *See Id.* at 65-67. The Human Services Committee of the Navajo Nation Council adopted the Report, and recommended that the full Council amend the NPEA based on the Task Force's proposed amendments. *See* Navajo Nation Council Resolution No. CO-73-90, Whereas Clause 7 (October 25, 1990); Human Services Committee Resolution No. HSC-0024-91, Resolved Clause 2 (October 2, 1990). The Council explicitly referenced the Report its resolution amending the NPEA, *see* Resolution No. CO-73-90, Whereas Clauses 5, 7, and the Council adopted all the Task Force's proposed amendments except for one not relevant here, *see id.*, Whereas Clause No. 7; Human Services Committee Resolution No. HSC-0024-91, Resolved Clause 2. Though most Navajo Nation statutes lack legislative history in terms of detailed reports, the Task Force Report discusses each section and the proposed amendments, and therefore is a useful source of information as part of an overall analysis of statutory intent. The Report, of course, is to be used in conjunction with other rules of statutory construction, including the stated rule of liberal construction in the NPEA, 15 N.N.C. § 602(B), and the mandate to interpret ambiguous language consistent with Navajo Common Law. *See supra* at 4.

The parties entered into an employment contract. The written contract between them was clear and unambiguous. The Appellants were explained the contract in both English and Navajo. There was no contention that the Navajo version differed from the English written version in any meaningful aspect.

The Navajo Nation permits oral contracts with very few restrictions. Written contracts may be modified by oral agreements, or by course of performance, which would point to an oral contract, either explicit or implicit. The courts need only find the requirements for the formation of a valid contract in order to enforce a contract. *Hood v. Bordy*, 6 Nav. R 349, 351-352 (Nav. Sup. Ct. 1991).

The facts show that in this case the parties modified the written agreement as to the number of hours worked per week. Appellants agreed to work more hours and Appellee agreed to pay them for their additional hours worked. The facts also show that there was not an agreement to modify the total number of hours permitted under the written contract. Appellee repeatedly made its intention known to Appellants that it would not expand the limitation on the total hours to be performed. The fact that ultimately Appellants were paid for forty hours or for forty-one and one half hours over the ceiling number of hours is not sufficient to indicate the parties changed their course of performance to modify the limitation term of the original contract. Appellants were properly paid for all the hours they worked.

Written notice of the end of Appellants' employment was contained within the written contract with the limit on the number of hours to be performed by Appellants. No other written notice was required, even if the definition of "adverse action" could be stretched to include this contractual limitation.

The fact that the Navajo Preference in Employment Act ("NPEA") was not mentioned in the written contract does not create an independent claim for damages or other compensation, including attorney fees. Courts will enforce the NPEA in all cases where it applies, whether the employment contract is in writing or not, and whether there is an explicit notice concerning the NPEA within the written contract. If the legislature wishes to amend the NPEA to provide a penalty for failure to give explicit written notice of its application, it may do so, but it is not appropriate for courts to create law where none exists.

I CONCUR with the affirmation of the decision of the Navajo Nation Labor Commission.