OPINION

This case concerns a decision of the Navajo Tribal Utility Authority (NTUA) to lay off an employee. Based on the Court’review, the Court vacates the decision of the Navajo Nation Labor Commission (Commission) and remands the case for further proceedings.
I
The relevant facts as found by the Commission are as follows. Appellee NTUA employed Appellant Milligan (Milligan), a non-Navajo, as a GIS Administrator. NTUA laid off Milligan, alleging that the establishment of a new GIS system that could be maintained and updated by other personnel made Milligan’s job unnecessary. The NTUA Management Board (Board) did not approve the layoff. The parties stated at oral argument that, several months after Milligan’s layoff, NTUA filled a position entitled “GIS Coordinator.” However, neither party had information on the duties of that position.
Milligan challenged his layoff before the Commission as a violation of the Navajo Preference in Employment Act (NPEA). The Commission upheld NTUA’s action, ruling that NTUA had shown “just cause” for the layoff. Specifically, the Commission ruled that NTUA no longer needed Milligan’s position based on the ability of other workers to learn to maintain and update the new GIS system, and therefore there was “just cause” to lay him off.
Milligan appealed the Commission’s decision to this Court. The Court held oral argument on February 24, 2006.
II
The issues in this case are 1) whether layoffs are within the jurisdiction of the Commission, and therefore appropriately before this Court on appeal; 2) if s ■. *733 whether NTUA laid off Milligan for “just cause.”
III
 This Court reviews decisions of administrative agencies, including the Commission, under an abuse of discretion standard. Etsitty v. Dine Bii Assoc., 6 Am. Tribal Law 702, 705, 2005 WL 0236357, **1-2 (Nav.Sup.Ct.2005). Among other things, the Commission abuses its discretion when it makes an erroneous legal conclusion. Id., 6 Am. Tribal Law at 705, 2005 WL 6236357, *2. Therefore, we review de novo, with no deference given to the Commission, whether a layoff requires “just cause,” and if so, whether such “just cause” exists.
IV
Before considering the merits of this case, the Court must consider a threshold issue: whether layoffs are within the juris-tjiction of the Commission, and therefore may be reviewed by this Court on appeal. See Budget and Finance Committee v. Navajo Nation Office of Hearings and Appeals, 6 Am. Tribal Law 717, 720, 2006 WL 6168350, *2 (Nav.Sup.Ct.2006) (Supreme Court must be sure it has jurisdiction over case). Put another way, the question is #hether a layoff is a “discharge” or “adverse action” requiring “just cause,” triggering the authority of the Commission to review the employer’s decision under the NPEA.
The NPEA mandates that employer's only “penalize, discipline, discharge” or take “adverse action” when there is “just cause.” 15 N.N.C. § 604(B)(8) (2005). As the Court has previously observed, the NPEA does not define these terms. See Smith v. Navajo Department of Headstart, 6 Am. Tribal Law 683, 685-36, 2005 WL 6235868, **1-2 (Nav.Sup.Ct.2005) (noting lack of definition of “just cause”); Sells v. Rough Rock Community School, 6 Am. Tribal Law 648, 651, 2005 WL 6235867, *2 (Nav.Sup.Ct.2005) (same for “adverse action”). To protect an employee from unjust action by an employer, the Navajo Nation Council (Council) enacted a broad range of requirements for employers to fulfill, including engaging in “adverse action” against an employee only for “just cause.” 15 N.N.C. § 604(B), 604(B)(8) (2005). Among the. stated purposes of the act, the Council included “pro-vid[ing] employment opportunities for the Navajo work force,” and “protecting] the health, safety, and welfare of the Navajo workers.” 15 N.N.C. §§ 602(A)(1), (6) (2005). Though these stated purposes refer to “Navajo” workers, the act’s protections apply equally to non-Navajo workers within the Nation. See Staff Relief Inc. v. Polacca, 2 Am. Tribal Law 512, 515-16, 2000 WL 35732587, **2-3 (Nav.Sup,Ct. 2000). Consistent with the broad scope and purposes of the NPEA, this Court defines “adverse action” as an action “affecting ongoing employment” in some “tangible, negative” way. See Goldtooth v. Naa Tsis’ Aan Community School, 6 Am. Tribal Law 667, 669-70, 2005 WL 6235969, **2-3 (Nav.Sup.Ct.2005); Sells, 6 Am. Tribal Law at 651-52, 2005 WL 6235867, **2-3.
This Court holds that a layoff is “adverse action” and therefore within the jurisdiction of the Commission to review. A layoff clearly affects ongoing employment in a tangible, negative way as, by definition, an employee no longer works for the employer. Further, because a layoff is “adverse action” an employer must provide “just cause,” and the Commission may review whether such just cause was provided. The Court concludes the Commission had jurisdiction over this dispute, *734 and therefore this appeal from the Commission’s decision is proper.
V
Ruling that layoffs can only be done for “just cause” does not define what “just cause” means in the layoff context. “Just cause” is a broad term covering a range of employer reasons for adverse action, and cannot be defined by one test. Smith, 6 Am. Tribal Law 683, 685-86, 2005 WL 6235868, **1-2. However, specific principles can be applied uniformly to cases with common facts. Id., 6 Am. Tribal Law at 686, 2005 WL 6235868, *2. Layoffs present unique concerns under the broad concept of “just cause,” as employers like NTUA treat layoffs differently than performance-based terminations. NTUA believes a layoff decision can be made without regard to the conduct of the employee, based on a decision by management that the position is no longer necessary. Milligan essentially argues that “just cause” means that layoffs must be treated the same as conduct-based terminations, by requiring an employer to justify the layoff based on the employee’s performance.
Whatever the substantive requirements for “just cause” are in the specific layoff context, all discharges or adverse actions first must fulfill certain procedural requirements before they are valid. Here, Milligan also argues NTUA did not follow a procedure required by its personnel manual, and therefore its layoff was improper. The Court considers that issue first.
A
Employers must follow certain procedures for their adverse actions to be valid under the NPEA. The act itself requires an employer to provide written notification of the specific reasons for the advert-action at the time of the action. 15 N.N.C. § 604(B)(8) (2005). Further, if an employer’s personnel manual requires a certa.'!, procedure before a discharge or layoff b effectuated, the Court will hold the employer to that procedure, and regardless of the substantive reason for the action, “just cause” will not be satisfied. See Dilcon Navajo Westerner v. Jensen, 2 Am. Tribal Law 502, 510-12, 2000 WL 35732586, ⅜*0 8 (Nav.Sup.Ct.2000) (concluding employ r did not follow procedure set out in manual).
Milligan asserts that NTUA did not follow its personnel manual when it failed to get prior approval of its Board to lay off Milligan. Milligan cites the following language from the personnel manual:
G. Lay-Off Policy
1. Lay-off in general applies to any termination from employment due to economic conditions, lack of work, abolishment of jobs, reduction or termination of operations, and/or reorganization under the terms a,nd, conditions approved, by the Management Board.
NTUA Personnel Policies Manual, Petitioner’s Exhibit 1, at 15 (emphasis added). According to Milligan, the reference to the Board modifies each action listed in the sentence, and therefore a layoff must be done with Board approval. NTUA argues the phrase referencing the Board only applies to the last category of action, reorganization. Therefore, according to NTL \ there is no requirement for Board approval if it lays off a worker.
The provision is ambiguous. Given the way the provision is written, with the Board reference at the end of a list, of actions, either interpretation is reasonable. Milligan argues that the ambiguity must be resolved against NTUA as the drafter. *735 See Benalli v. First National Insurance Co., 7 Nav. R. 329, 335, 1 Am. Tribal Law 665 (Nav.Sup.Ct.1998); Wilson v. Begay, 6 Nav. R. 1, 4-5 (Nav.Sup.Ct.1988) Milligan also notes that this Court applies the Navajo concept of ííshjání ádooniíl, which mandates that laws must be clear so that they may be understood. See Phillips v. Navajo Housing Authority, 6 Am. Tribal Law 708, 711-13, 2005 WL 6236356, **3-4 (Nav.Sup.Ct.2005) (statute purporting to affirm NHA’s sovereign immunity); Yazzie v. Thompson, 6 Am. Tribal Law 672, 674, 2005 WL 6235970, *2 (Nav.Sup.Ct.2005) (rules for domestic violence proceedings); Rough Rock Community School v. Navajo Nation, 7 Nav. R. 168, 174 (Nav.Sup.Ct. 1995) (statute authorizing Board of Election to Supervisors to determine eligibility for school board elections). Based on these concepts, Milligan contends the Court should adopt his interpretation, and require Board approval of all NTUA layoffs.
Though these rules advocated by Milligan might be applied, the fact that the title of the manual provision is “Lay-Off Policy” is enough to require NTUA to provide a clear policy before a layoff is valid, regardless of the provision’s ultimate meaning. The title of the provision suggests to employees that there is a “policy” that sets out how NTUA wall decide whether to lay them off. However, in the absence of clear guidance in the language of the provision, there is actually no procedure for NTUA to follow or for its employees to understand. At oral argument, NTUA stated that there actually is no specific policy approved by the Board on layoffs. NTUA therefore did not follow its own personnel manual when it laid off Milligan, because, despite NTUA’s representation, there is no policy for Milligan to understand how NTUA reached the layoff decision. The lack of any guidance on how layoff decisions are made prevents an employee from finding out who made the decision, and based on what criteria. NTUA cannot represent to its employees that there is a set, understandable layoff policy, and then not provide it.
Unless there is a clear layoff policy in some other document available to NTUA’s employees, Milligan’s layoff is invalid.[1] The only other document that might set out a layoff policy is NTUA’s affirmative action plan, a document required by the NPEA. See 15 N.N.C. § 604(A)(2) (2005). Each employer within the Navajo Nation must file an affirmative action plan with the Office of Navajo Labor Relations. Presumably NTUA filed an affirmative action plan, and that plan might include a layoff policy.[2] See id.
As the affirmative action plan is not in the record of this case, the Court cannot know whether it includes a layoff policy, and therefore must remand the case to the Commission. This Court does not make factual findings, Allstate Indemnity Co. v. *736 Blackgoat, No. SC-CV-15-01, slip op. at 10 (Nav.Sup.Ct. May 20, 2005), and as NTUA did not submit its plan into the record, the Commission on remand must discern whether a layoff policy is included. If there is no such policy, the Commission must conclude that Milligan was laid off without “just cause,” as, based on the above discussion, the lack of a policy makes Milligan’s layoff invalid. The Commission must then decide what remedy is appropriate. If there is a policy, the Commission first must decide whether employees have notice of the affirmative action plan such that Milligan should have been aware of and bound by its contents. See Smith, 6 Am. Tribal Law at 687, 2005 WL 6235868, *3 (rule in personnel manual generally is binding if employee has notice). Further, if there is a policy, the Commission must decide whether that policy was followed in this case. If there was no notice, or if the policy was not followed, the Commission must conclude Milligan was improperly laid off, and decide the appropriate remedy.
B
Assuming NTUA satisfies the procedural requirement discussed above, the Commission must consider whether the layoff meets the substantive requirements for “just cause.” Milligan argues that a layoff decision must be based on an employee’s “substantial misconduct,” and may not be made for economic or other non-conduct based reasons. NTUA contends that Mil-ligan’s view of “just cause” is too restrictive, as it would prevent an employer from making decisions to eliminate positions to better manage the business and promote its economic success.
As layoffs involve considerations different than discharges, the Court rejects Mil-ligan’s argument. Despite the good job performance of employees, businesses sometimes have to make adjustments to their work force to maintain financial viability and operational efficiency. As a tribal enterprise providing needed utilitie.-for Navajo people, NTUA has a unique need to promote financial viability and operational efficiency. The NPEA anticipates the need for employer flexibility and balances it with the rights of Navajo workers, requiring that, when there is a “reduction-in-force,” Navajos be retained until all non-Navajo workers are first “laid-off." 15 N.N.C. § 604(C)(2) (2005). Layoffs therefore are not prohibited by the statute, but regulated to protect Navajo workers, and nothing in the act requires employers to lay off workers only for “substantial misconduct.”
The Court holds that “just cause" for layoffs does not require “substantial misconduct” of employees, but layoffs may be made when necessary to promote financial viability or operational efficiency.[3] However, a mere statement by an employer that a layoff was necessary is not sufficient, because the employer has the burden of proof to justify its action under the NPEA. See 15 N.N.C. § 611(B) (2005). NTUA must submit evidence supporting its position that such layoff was necessary. Otherwise, employers might use layoffs as a pretext for backdoor discharges, and, as is alleged here, get rid of employees with good job performance for personal or other inappropriate reasons by merely claiming the layoff was necessary. The Court does not endorse circumventing the NPEA’s “just cause” requirement through creative usé of otherwise appropriate em *737 ployment management devices such as term contracts or layoffs. See Sells, 6 Am. Tribal Law at 652 n. 1, 2005 WL 6235867, ‘3 n. 1 (stating that term employment contracts are allowed under NPEA, but that Court and Commission should review the use of such contracts to prevent attempts to circumvent “just cause” requirement). Therefore, the Commission must review the evidence presented by the employer on the reasons for the layoff, and the employee may challenge the evidence as inaccurate or as pretext to avoid a conduct-based termination.
As this new standard changes the Commission’s analysis of layoffs, the Court must remand the case for further review. See Etsitty, 6 Am. Tribal Law at 704-05, 2005 WL 6236357, **1-2 (remanding case after announcing new definition of “independent contractor”). The Commission should consider the reasons NTUA gave for laying off Milligan. This analysis includes findings the Commission did not make in its previous decision. Specifically, ihe Commission must review the GIS system NTUA adopted that allegedly made Milligan’s job obsolete, and, based on the evidence, decide whether NTUA’s layoff was justified for operational efficiency. As Dart of this analysis, the parties mentioned at oral argument a new position called CIS coordinator,” filled several months after Milligan’s layoff, which, depending on the job description, may or may not indicate that a person with technical expertise was indeed necessary to run or manage ihe system. The Commission must make findings on these issues, and again conclude whether NTUA laid off Milligan for "just cause.” As state above, and as the Court emphasizes again, this analysis is only necessary if NTUA fulfilled the procedural requirements for implementing layoffs by providing a clear policy and following it.
VI
Based on the above, the Court VACATES the Commission’s decision, and REMANDS for further proceedings consistent with this opinion.

. Of course, NTUA may remedy this problem in the future by clearly stating the layoff policy so that employees may know how NTUA makes such decisions. Cf. Goldtooth, 6 Am. Tribal Law at 671, 2005 WL 6235969, *4 n. 3 (ambiguity concerning whether offers to renew employment contracts require board approval could be solved through revision of the school personnel manual).

, The Court notes that an “affirmative action plan" might include a policy setting out under what circumstances non-Navajos might be laid off to fulfill the purposes oí the act. See 15 N.N.C. §§ 604(A)(1) (stating that goal of Navajo Nation is to employ Navajos “in all job classifications, including supervisory and management positions”); (B)(10) (mandating training as an integral part of an affirmative action plan); (C)(2) (mandating that Navajos shall be retained in the case of a reduction-in-force and have the right to displace non-Navajo in other position if qualified).

. The Court does not mean to say that layoffs are only appropriate when necessary to promote financial viability or operational efficiency. There may be other reasons a layoff: is done for “just cause” not implicated in this case.