OPINION

This case concerns the conviction and sentencing of Appellant James Kelly (Kelly) for two crimes, reckless driving and homicide by vehicle (based upon the reckless driving). The Court affirms in part and vacates in part the judgment of the Shiprock District Court (District Court).
I
These facts are from the District Court’s judgment. Kelly was in a two vehicle accident near Shiprock on Highway 64 in an area known as “Red Wash,” approximately fifteen miles west of Shiprock. Kelly, on his way home from work, was driving west at that area. Highway 64, a two-lane road, slopes westward up a steep grade and has guardrails on both sides. Kelly attempted to pass two vehicles on the upward slope. One of the drivers ahead of Kelly and one behind him testified that they saw a vehicle traveling the other direction down the slope. The driver ahead of Kelly stated that the oncoming vehicle was “in plain sight.” Kelly tried to clear the two vehicles in front of him, but was unable to do so. The driver behind Kelly stated that he slowed down to allow Kelly room to move back into his lane, but that Kelly did not do so. The guardrails prevented him from taking other evasive action. Even though he slammed on his brakes, he collided head-on with the eastbound vehicle. The east-bound driver died as a result of the accident.
The District Court convicted Kelly of reckless driving and homicide by vehicle. Kelly appealed to this Court. The Court initially remanded the case to the District Court for findings of fact and conclusions of law. Kelly then appealed again. This Court heard oral argument on March 17, 2006 at the University of Michigan Law School.
II
The issues in this case are (1) whether there is sufficient evidence to convict Kelly of reckless driving and homicide by vehicle, and (2) if there is such evidence, whether convicting Kelly of both crimes violates double jeopardy under the Navajo Bill of Rights.
*775 ni
Whether there is sufficient evidence to sustain the convictions, and whether such convictions violate double jeopardy are questions of law. The Court review’s such questions de novo, with no deference given to the district court’s decision. Navajo Nation v. Badonie, No. SC-CR-06-05, 6 Am. Tribal Law 725, 727, 2006 WL 6168955 at *1-2 (Nav.Sup.Ct. 2006).
IV
Kelly first argues that there was insufficient evidence to convict him of reckless driving and homicide by vehicle. Kelly does not directly challenge the District Court’s factual findings, but asserts that those findings cannot support both convictions. He asserts that he was merely “negligent” in attempting to pass the two vehicles in front of him, and therefore did not fulfill the elements for reckless driving by acting “carelessly in willful or wanton disregard of the rights or safety of others, and ... in a manner so as to endanger or be likely to endanger any person or property.” 14 N.N.C. § 708 (2005). As he allegedly did not drive recklessly, he claims he also did not fulfill the elements of homicide by vehicle, which requires “the killing of a human being by the unlawful operation of a motor vehicle.” 14 N.N.C. § 703(A) (2005). Kelly cites to New Mexico and Utah cases defining reckless driving, asserting his actions did not rise to the level of carelessness and wanton disregard for the safety of the other motorist as defined by these cases. Indeed, Kelly’s counsel at oral argument suggested the other motorist may have been negligent, contributing to the accident. The Navajo Nation disagrees, stating that the District Court’s judgment included ample evidence to justify the convictions.
The elements of the reckless driving statute, using broad terms such as “wanton,” “willful,” and “endanger,".require an analysis of the specific facts in the case. Attempts to define “wanton” in the abstract have not led to much more specificity than the term itself. For instance, Black’s Law Dictionary defines “wanton” as “[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences.” Black’s Law Dictionary 1576 (7th ed.1999). In the absence of a definition of “wanton” in our statute, the Court could adopt that definition. However, without a specific factual scenario, those other terms are no more helpful than “wanton.” “Willful” is easier to define in the abstract, as it suggests an intentional action. However, whether a certain action was done intentionally may not be immediately apparent, and therefore also depends on the specific factual circumstances. Finally, whether such action “endangers” or is “likely to endanger” other people also depends on the unique circumstances surrounding the defendant’s actions.
Based on the District Court’s findings of facts, this Court. holds there is sufficient evidence to sustain the reckless driving conviction. Given the location where he attempted to pass two vehicles on an upward slope of a two-lane road, with guardrails on either side hindering evasive action Kelly could not return to his lane, after the motorist slowed down behind him to make room. Most significantly, both drivers of the other vehicles stated they sawr the oncoming motorist, with one describing the other vehicle as being “in plain view.” Kelly’s actions show a wanton disregard for the safety of other motorists. His attempt to pass despite the apparent physical limitations on the road and the clear presence of an oncoming vehicle in his lane was also intentional, and therefore “willful.” Further, his action clearly en *776 dangered the surrounding motorists. This type of eonduet, “t’áá bizááká,” is not tolerated in Diñé society.
As Kelly was driving recklessly, and that driving resulted in a death, there is also sufficient evidence to support the homicide by vehicle conviction. As is discussed in more detail below, see supra, Section V(B), reckless driving is the “unlawful operation of a motor vehicle,” and, therefore, if a death occurred due to the reckless driving, there is sufficient evidence to sustain a conviction for homicide by vehicle. The Court affirms the District Court’s conclusions of law that there was sufficient evidence to convict Kelly of both offenses.
V
The second issue is whether convicting Kelly for both reckless driving and homicide by vehicle violates the prohibition against double jeopardy in the Navajo Bill of Rights. See 1 N.N.C. § 8 (2005). Kelly argues his right to be free from double jeopardy was violated because the two statutory offenses really punish the same crime. He argues that this Court must therefore vacate the reckless driving conviction and that once the reckless driving conviction is vacated, the homicide by vehicle conviction must necessarily also be vacated. The Nation disagrees, contending that a close reading of the provisions defining the two offenses, show that they punish distinct conduct, and therefore the two convictions do not violate double jeopardy. Though both parties appear to agree that the question depends on examining the elements of each offense and then deciding whether they punish the same conduct, they disagree on the outcome of that analysis. The Court first must define what double jeopardy means in Dine context.
A
“Double jeopardy” is a term adopted from Bilagáana, law, which, in a single prosecution, bars convictions for multiple offenses if the offenses punish the same conduct. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1982). Under the federal interpretation of double jeopardy, if the legislature intended that separate statutory offenses punish distinct conduct, there is no violation, and the defendant can be convicted for each offense in the same case. Rutledge v. United, States, 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). Federal courts generally discern legislative intent by examining the elements of each offense under the so-called Blockburger test, asking “whether each provision requires proof of a fact which the other does not.” Blockburger, 284 U.S. at 304, 52 S.Ct. 180; see also Rutledge. 517 U.S. at 297, 116 S.Ct. 1241 (comparing elements of conspiracy to distribute controlled substance and continuing criminal enterprise); Brown v. State, 432 U.S. 161, 167-69, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (comparing elements of auto theft and joyriding). If, based on the elements, the separate provisions punish the same conduct, convicting a defendant under both generally violates double jeopardy. Id. However, if the legislature nonetheless clearly intended to cumulatively punish the same conduct under two or more statutory offenses, multiple convictions do not violate double jeopardy. Missouri v. Hunter, 459 U.S. 359, 368-69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (upholding separate conviction and sentencing of a defendant for first degree robbery and armed criminal action).[1]
*777 A threshold question in this case is whether “double jeopardy” in the Navajo Rill of Rights has the same meaning. Merely because the Navajo Bill of Rights uses the same term does not mean that the Court should simply adopt and apply federal interpretations. See Navajo Nation v. Rodriguez, No. SC-CR-03-04, 5 Am. Tribal Law 473, 477-78, 2004 WL 5658107 at *3-4 (Nav.Sup.Ct.2004). Though the Court considers federal interpretations, the Court ultimately must interpret the Bill of Rights consistent with Diñé bi been-ahaz’áanii. See id.; see also Navajo Nation v. Morgan, No. SC-CR-02-05, 6 Am. Tribal Law 697, 697-99, 2005 WL 6235952 at *1-2 (Nav.Sup.Ct.2005) (interpreting waiver of right to trial under házhó’ógo); Eriacho v. Ramah Dist. Ct., No. SC-CV-61-04, 6 Am. Tribal Law 624, 629 n. 1, 2005 WL 6235849 at *3 n. 1 (Nav.Sup.Ct. 2005) (same for waiver right to jury trial); Duncan v. Shiprock Dist. Ct., No. SC-CV-51-05, 5 Am. Tribal Law 458, 465-66, 2004 WL 5658109 at *6-6 (Nav.Sup.Ct.2004) (interpreting right to jury trial in light of Diyin Nohookáá Dine’é Bi Beehaz’áanii). This Court previously adopted the federal Blockburger test to interpret double jeopardy, but did not consider the test in light of Diñé bi beenahaz'áanii. See Navajo Nation v. McDonald, 6 Nav. R. 432, 446 (Nav.Sup.Ct.1991). The Court therefore is not bound by that previous interpretation. See Eriacho, No. SC-CV-61-04, 6 Am. Tribal Law 624, 629 n. 1, 2005 WL 6235849 at *3 n. 1.
The interpretation of the prohibition against double jeopardy in the Navajo Bill of Rights must be analyzed with an understanding of the Dine traditional approach to resolving disputes. The traditional system of resolving disputes lives on today as illustrated by the Peacemaking Program. This system can be, and is applied by the people, to resolve that which would be deemed criminal conduct under contemporary Navajo statutes. Peacemaking is premised upon participation by all those affected, including victims. Furthermore, consensus of all of the participants is critical to resolution of the dispute, concern or issue. With full voluntary participation (t’áá aliso alhil ka’iijée’go) and consensus, a resolution is reached with all participants giving their sacred word (hazaad jidisin-go) that they will abide by the decision. The resolution (guided by Diñé be beena-haz’áanii), in turn, is the basis for restoring harmony (bee hózh>ónáhodoodleel). Hozhó is established if all who participated are committed to the agreement and consider it as the final agreement from which the parties can proceed to live in harmony again. Finality is established when all participants agree that all of the concerns or issues have been comprehensively resolved in the agreement (ná bináheezláago bee t’áá lahj>í algha’ deet’>á).
The Court interprets double jeopardy in the context, of this concept. In the modern context of legislating criminal conduct, conviction and sentencing for a statutory criminal offense resolves an offender’s wrongful conduct, or, as more commonly said, “justice is done.” As the functional equivalent of traditional resolution through an agreement, a conviction and sentencing should be the final resolution of the dispute caused by a defendant’s single action. Multiple charges under multiple statutory offenses for a single ac *778 tion undermine that finality, as conviction for a single offense does not resolve the entire dispute. The Navajo Nation courts therefore cannot lightly apply multiple statutory offenses to a defendant’s single action. The Council must clearly intend the separate offenses to punish separate conduct, and therefore resolve separate disputes. Duncan, No. SC-CV-51-05, 5 Am. Tribal Law at 465-66, 2004 WL 5658109 at ⅜5~6 (as jury trial reflects traditional Navajo values of participatory democracy, Council may restrict that right only if intent is clear). The Court will apply heightened scrutiny to provisions that allegedly create separate offenses based on a single action, and in the absence of clear intent that the statutory offenses indeed punish separate conduct, multiple convictions for the same action will be barred by double jeopardy. The mere fact that the elements of the two or more statutory offenses are fulfilled by a defendant’s action does not, by itself, show clear intent. In other words, the mere fact that each offense “requires proof of a fact which the other does not,” the Block-burger test, alone does not establish clear intent. Because the application of multiple criminal statutes to the same action could be done for other purposes, such as enhancing the chances for conviction or increasing the pressure on the defendant to enter into a plea agreement—purposes other than the objective of bee hózhó náho-doodleel—the Court will scrutinize whether the separate statues dearly evince different conduct. Therefore, prosecutors must be aware that multiple charges arising out a defendant’s single action may not allow multiple convictions, as the offenses charged must clearly resolve separate conduct to not violate a defendant’s double jeopardy right.[2]
The Dine concept of “double jeopardy” also means that even if the Council creates two separate offenses that clearly punish the same conduct, it cannot nonetheless mandate multiple punishments, even if its intent is clear. Multiple punishments for the same conduct are contrary to the Navajo concepts described above. The Court therefore differs from the approach in Missouri v. Hunter.[3]
B
With the Dine concept of double jeopardy in mind, the Court turns to the specific statutory provisions in this case. The Council created separate statutory offenses for reckless driving and homicide by vehicle. See 14 N.N.C. § 703; 708 (2005). As discussed above, reckless driving requires careless driving “in willful and wanton disregard of the rights or safety of others and ... in a manner so as to endanger any person or property.” 14 N.N.C. § 708 (2005). Homicide by vehicle requires a death caused by “the unlawful operation of a motor vehicle.” 14 N.N.C. § 703(A) (2005). There is a clear interconnection between the two statutes, as a motorist who drives recklessly engages in the “unlawful operation of a motor vehi-; ele.” As happened in this case, if someone dies as a result of the reckless driving, *779 then a defendant’s single action can fulfill both offenses. Furthermore, the Council explicitly tied them together in the homicide by vehicle provision: “Any person who is convicted of homicide by vehicle while violating § 707[DUI] or § 708 [reckless driving] shall be subject to imprisonment and a fine of the maximum amounts allowed by law.” 14 N.N.C. § 703(B) (2005). The Council then knew (or is assumed to know) that a defendant’s reckless driving resulting in death would fulfill both offenses.
The main question concerning the two subsections is: What punishment should be applied? One reading of subsection B is that an offender who “violates” the reckless driving provision, when their reckless driving results in a death, should only be “convicted” only of homicide by vehicle, but then should be punished to the maximum allowed by Navajo law. The use of “violates” and “convicted” might be an intentional distinction, meaning that the Council was aware of the potential dual convictions, but chose only to allow the homicide by vehicle conviction. Under this reading, the Council actually intended the opposite of multiple punishments, as it decided that given that both offenses punish reckless driving, only one conviction was appropriate if the reckless driving caused a death. On the other hand, it may be that the Council intended no such distinction, and merely used two different terms (“violating” and “convicted”). Instead, subsection B might have been intended to mandate separate punishment for reckless driving and the unlawful operation of a vehicle causing death as separate conduct, and to further mandate the maximum punishment for homicide by vehicle to create a significant deterrent to driving recklessly and causing a death.
The provisions are at best ambiguous, and therefore do not show clear intent to punish separate conduct. The Nation only argued that death is what distinguishes the two crimes and that this difference in the elements fulfills the Blockbmyer test. In light of the traditional concept of finality, the Court holds that there is not clear intent to punish separate conduct, and therefore convictions for both violate double jeopardy. In such situations, the Court concludes that the conviction for the lesser of the offenses cannot stand, and therefore the reckless driving conviction must be vacated. The court rejects Kelly’s argument that both convictions must be vacated. In future cases, a prosecutor must file the complaint with double jeopardy in mind, and understand that an offender cannot be convicted of both reckless driving or DUI and homicide by vehicle when such conduct causes a death. If the Prosecutor charges the defendant with reckless driving or DUI and homicide by vehicle, and establishes the elements of reckless driving or DIJ1, and that a death resulted from those actions, the district court may only convict the defendant for the homicide offense.
VI
The Court affirms the trial court’s conclusion that there was sufficient evidence to convict Kelly of both offenses. The Court VACATES the conviction for reckless driving as barred by the Navajo Nation Bill of Rights’ prohibition against double jeopardy. The Court notes that the District Court appears to not have followed the mandate in subsection B of Section 703 that a defendant be punished to the maximum for the homicide by vehicle conviction. The District Court sentenced Kelly to 365 days in jail, but suspended the jail sentence to probation. The District Court also fined Kelly $2500, which, arguably is less than what could have been *780 imposed.[4] However, this aspect oí the lower court’s sentences was not mentioned by the Navajo Nation, and the Court will not take it upon itself to impose a higher sentence than that issued by the District Court. The issue of what sentencing discretion a District Court has under § 703(B) is an issue for another day in another case.

. Not all the justices of the Supreme Court joined in the Hunter opinion. Indeed, a strong dissenting opinion reasoned that a legislature should never have the authority to *777 punish the same conduct through multiple statutory offenses. See Hunter, 103 S.Ct. at 679-681. According to the dissent, if the protection against double jeopardy was to have any meaning, "a State cannot be allowed to convict a defendant two, three, or more times simply by enacting separate statutory provisions defining nominally distinct crimes.” Id. at 680.

. One example where two statutory offenses resolve different conduct arising out of the same action is where a defendant drives recklessly, 14 N.N.C. § 708 (2005), but also refuses to obey a lawful order of a police officer to pull his or her vehicle over, 14 N.N.C. § 700 (2005). In that situation, the defendant may be convicted and sentenced for both, as the offenses involve separate conduct.

. Indeed, the Hunter dissenting opinion's position that legislative application of two or more statutory offenses to the same conduct unfairly convicts a defendant multiple times, see infra, at 680 n. 1, is more consistent with: Navajo values.

. The homicide by vehicle statute does not specify a fine amount, and does not specify what "law” defines the maximum amount allowed. See 14 N.N.C. § 703(B) (2005). The homicide by vehicle statute is in the Navajo Nation Motor Vehicle Code, and the general provision on penalties in that code refers to the general penalty sections of the Navajo Nation Criminal Code. 14 N.N.C. § 701 (2005) (referencing Section 221 to 225 of the Criminal Code to define punishment). The general fine provision in the Criminal Code was amended in 2000 to no longer state a specific maximum, but to state that a convicted defendant can be sentenced to a fine "as designated for that offense.” 17 N.N.C. § 222(A) (2005). The Motor Vehicle Code was not amended along with the Criminal Code to coordinate the change in the fine provision, and there is then an ambiguity concerning the amount, if any, of a fine that can be assessed for homicide by vehicle. It appears the maximum amount allowed in the Navajo Nation Criminal Code for a specific offense is $5,000, which is the amount allowed for criminal homicide. See 17 N.N.C, § 303(B) (2005). This appears to track the fine cap in the federal Indian Civil Rights Act, which purports to limit tribal authority to fine a defendant to $5,000 per offense. See 25 U.S.C. § 1302(7) (2000). Obviously, the'legislature needs to revisit these provisions.