OPINION

The Navajo Nation Labor Commission (Commission) found that Harrison Toledo (Toledo), a Bashas’ employee, sexually harassed a fellow employee in violation of Bashas’ Member Handbook, and therefore was terminated for “just cause” under the Navajo Preference in Employment Act (NPEA). The Commission also:found that Bashas’ violated three other provisions of the NPEA, but only issued a remedial order for one of those violations. The Court affirms the Commission.
I
Appellant Toledo was an Assistant Night Crew Chief at Bashas’ Dine Market # 35 located in Window Rock. On April 29, 2004, Toledo was terminated from his employment with Bashas’ based on alleged misconduct involving verbal and physical harassment of a fellow Bashas’ employee. During an investigation into the incident, Toledo admitted that he had touched the breast of the employee while on duty. The investigation revealed that Toledo had previously had a sexual relationship with the employee, and indicated that he wished to rekindle that relationship.
Toledo filed a complaint with the Commission alleging, among other things, that he was fired without “just cause,” as required by the NPEA. At the proceeding, Toledo denied he had touched the employee’s breast. He also stated that he did not need training on sexual harassment to know that touching a female employee’s breast was “wrong.” The Commission upheld the termination, concluding that Toledo had touched the employee’s breast, and had sexually harassed that employee in violation of Bashas’ Member Handbook. In addition, the Commission found that Bashas’ violated three sections of the NPEA: 15 N.N.C. S (504(B)(8), because it stated an “at-will” employment policy in its Handbook, 15 N.N.C. S 604(A)(2), by failing to have an affirmative action plan, and 15 N.N.C § 605, by failing to send workforce reports to the Office of Navajo Labor Relations (ONLR). The Commission ordered Bashas’ to amend its at-will employment policy within sixty days, but ordered no remedy for the other two violations, *798 stating that they were “harmless” violations because virtually all of Bashas’ workers on the Navajo Nation were Navajo tribal members. Bashas’ did amend its at-will policy. This appeal followed. The Court held oral argument on July 13, 2006 and now issues this decision.
II
The issues in this case are (1) Whether Bashas’ had “just cause” to terminate Toledo on the basis that he sexually harassed another employee in violation of Bashas’ Member Handbook, when allegedly he received no sexual harassment training; and (2) whether the Commission erred in not granting remedial relief based on its conclusions on Bashas’ remaining violations of the NPEA: 15 N.N.C. § 604(A)(2), lack of an affirmative action plan, and 15 N.N.C § 605, failing to send workforce reports to the Office of Navajo Labor Relations.
III
This Court reviews decisions of the Commission under an abuse of discretion standard. Smith v. Navajo Nation Dep’t of Head Start, No. SC-CV-50-04, 6 Am. Tribal Law 683, 685, 2005 WL 6235868 at *1 (Nav.Sup.Ct.2005). For example, “the Commission abuses its discretion when it makes a mistake as to applicable law, that is, makes an erroneous legal conclusion.” Tso v. Navajo Housing Authority, No. SC-CV-10-02, 4 Am. Tribal Law 641, 642-43, 2003 WL 25794038 at *1-2 (Nav.Sup.Ct.2004). The Court’s review of factual findings, however, is more deferential. Id., at 4 Am. Tribal Law 641, 642-43, 2003 WL 25794038 at *1-2. This Court will find that a decision is “supported by substantial evidence” when “a ‘reasonable mind’ could accept [the evidence] as adequate to support the conclusion, even if it is possible to draw two inconsistent conclusions from the evidence.” Id. Legal conclusions are reviewed de novo, “with no deference given to the Commission’s interpretation of the law.” Smith, at 6 Am. Tribal Law at 685-86, 2005 WL 6235868, *1-2. Whether there is “just cause” for termination or whether the Commission is required to issue remedial orders for every NPEA violation are legal conclusions.
IV
Toledo argues that he never re-eeived sexual harassment training and therefore Bashas’ did not have “just cause” under the NPEA to fire him on sexual harassment grounds. The Commission made no findings on whether Bashas’ adequately trained Toledo. Generally, if training were relevant to the question of “just cause,” the Court would be required to remand the case back to the Commission for factual findings on whether Toledo received sexual harassment training, However, though Toledo argues before this Court that he lacked training, he did not assert that point in his charge or complaint. This Court recently ruled in Hood v. Navajo Nation Department of Headstart that the Commission can only make findings of fact and conclusions of law on those claims raised by the employee in his or her charge filed with ONLR and those issues remaining when the employee files a complaint with the Commission. No. SC-CV-11-05, 6 Am. Tribal Law 721, 723-24, 2006 WL 6168349 at *2-3 (Nav.Sup.n. 2006). Toledo argues to this Court that the lack of training is an affirmative violation of the NPEA requiring damages. Hood barred the Commission, and bars this Court from considering that alleged affirmative violation. Toledo also uses the alleged lack of training as a defense to Bashas’ assertion that Toledo committed sexual harassment. In this context, the lack of training is not an affirmative claim, *799 but a defense in response to the employer’s position that the employee was fired for “just cause.” Hood does not bar review of that defense. The Court therefore considers whether training affects whether Bashas’ fired Toledo for “just cause.”
In Smith, the Court ruled that “[j]ust cause is a broad concept that involves unique factual circumstances in each situation and therefore must be applied based on the unique facts of each case.” No. SC-CV-50-04, 6 Am. Tribal Law at 686, 2005 WL 6235868 at *2. In addition, the Court has stated that “just cause” can include “a wide range of employer justifications for adverse actions.” Dilcon Navajo Westerner/True Value Store v. Jensen, No. SC-CV-52-98, 2 Am. Tribal Law 502, 509, 2000 WL 35732586 at *5 (Nav.Sup.Ct.2000). In Smith the Court interpreted “just cause” in the context of a clear rule in a personnel manual defining conduct. The Court ruled that “ordinarily a violation of a clear rule in a personnel manual for which termination is a result of non-compliance is ‘just cause.’ ” No. SC-CV-50-04, 6 Am. Tribal Law at 686, 2005 WL 6235868 at *2.
The Commission relied on Bashas’ sexual harassment policy in its Handbook to support Toledo’s termination. That policy states that “[i]t is [Bashas’] policy to maintain a work environment free from harassment and/ or intimidation.” Handbook, Respondent’s Exhibit C, at 18. The Handbook further defines “sexual harassment” as “[h]arassment that includes any unwanted sexual advance.” Id. The Handbook includes several examples, including “[t]o make unwelcome sexual advances, request for sexual favors, or other verbal or physical contact a condition of continued employment or of any employment decision.” Id. Bashas’ did not allege in its termination notice that Toledo attempted to exchange sexual favors for a favorable employment decision. The Handbook further includes among actions constituting sexual harassment, “creat[ing] an intimidating, hostile or offensive working environment by such conduct.” Id. The Handbook does not define any of the terms “intimidating,” “hostile,” or “offensive.” Finally, the Handbook states that the specific definitions of sexual harassment are “for clarification purposes only and is not, complete or all inclusive.” Id.
Generally, an ambiguous policy, in the absence of training to inform employees of what that policy means, cannot justify termination. See Smith, No. SC-CV-50-04, 6 Am. Tribal Law at 685-86, 2005 WL 6235868 at *1-2 (requiring violation of a “clear rule” to justify “just cause” termination); cf. Phillips v. Navajo Housing Authority, No. SC-CV-13-05, 6 Am. Tribal Law 708, 711-13, 2005 WL 6236356 at *3-4 (Nav.Sup.Ct.2005) (discussing Navajo principle of ííshjání ádoonifi, mandating that laws be clear). The Court realizes that it is difficult to draft a policy in a personnel manual to clearly and accurately define a broad concept like sexual harassment, particularly when the policy includes terms like “hostile work environment,” which may not be capable of clear defini tion outside the context of specific situations. Cf. Smith, No. SC-CV-50-04, 6 Am. Tribal Law at 685-83, 2005 WL 6235868 at *1-2 (“just cause” can only be defined under facts of each case); Navajo Nation v. Kelly, No. SC-CR-04-05, 6 Am. Tribal Law 772, 774, 2006 WL 6168966 at *1 (Nav.Sup.Ct.2006) (same for definition of terms “wanton” and “endanger” in crime of reckless driving). All employers within the Navajo Nation therefore must ensure proper training on their sexual harassment policy if such policies are to be *800 deemed reasonable notice of conduct that may cause an employee’s termination.
In the present case, however, the Court finds that the ambiguity of Bashas’ sexual harassment policy and alleged lack of training became irrelevant once Toledo admitted during the Commission hearing that he did not need training to know that touching another employee’s breast was “wrong.” Importantly, Toledo’s counsel at oral argument did not contest that Toledo touched the other employee’s breast, but argued that the lack of training on Bashas’ ambiguous sexual harassment policy excused such behavior, particularly in the context of the past relationship between Toledo and the employee. The Court finds such behavior so obviously inappropriate, regardless of the past relationship, that Bashas’ ambiguous sexual harassment policy is not implicated in this case.[1] Common sense indicates that Toledo’s behavior—of touching another employee’s breast while in the workplace—was so egregious that termination would be a likely consequence, and Toledo himself admitted as much when he stated that he did not need training to know such behavior was wrong. See Kesoli v. Anderson Security Agency, No. SC-CV-01-05, slip op. at 5-6 (Nav. Sup.Ct. October 12, 2005) (supervisor shouting at subordinates was “harassment” and therefore “just cause” in absence of personnel manual). There was therefore “just cause” to terminate Toledo, and the Commission did not err.
V
The remaining issue is whether the Commission erred when it declined to issue any remedial order for two out of the three violations of the NPEA it concluded Bashas’ committed. The Commission concluded that Bashas’ violated three sections of the NPEA independent of the “just cause” issue discussed above. It only ordered Bashas’ to remedy one of the three violations, the inclusion of an “at-will” policy in the Handbook, and considered “harmless” the lack of an affirmative action plan and the failure to submit work force reports to the Office of Navajo Labor Relations. Toledo argues that the Commission erred in not ordering a remedy for the two “harmless” violations, and also asserts that it should have remedied the violations by awarding Toledo damages,
The Commission erred, but not for the reason asserted by Toledo. Toledo did not assert Bashas’ violated the three provisions in its charge and complaint, and, based on Hood, the Commission therefore was not empowered to make any conclusions on those violations. This does not mean Bashas’ may violate the NPEA with impunity if an employee does not raise such violations. ONLR has the authority to file its own charge and investigate violations of the NPEA, 15 N.N.C. § 610(B)(1) (2005), and may remedy any violation by Bashas’ through this process. It is ONLR’s duty and responsibility, in the absence of an employee charge that an employer violated the NPEA, to investigate violations of the act, and use its authority to seek a remedy.
The lack of authority to review these violations has several ramifications. Ordinarily the Court would vacate the remedial order to revise Bashas’ at-will policy, as it *801 was beyond the Commission’s authority. However, Bashas’ does not request that the order be vacated, and has already complied with the NPEA by changing its policy within the Navajo Nation. Under the circumstances of this case, the Court will not reverse the Commission's order to amend the at-will policy. However, because Toledo did not assert the statutory violations in his charge and complaint, the Court will not disturb the Commission’s decision not to issue remedial orders for the other two violations.
 Even assuming the Court did review the Commission decision, Toledo would not prevail. The Commission has discretion in determining what type of remedial relief is appropriate for NPEA violations. Section 612 of the NPEA outlines the remedies and sanctions the Commission may implement for violations of the Act. 15 N.N.C. § 612(A)(1) states the Commission, after finding a violation of the Act, shall issue one or more remedial orders, including, “without limitation”: directed hiring, reinstatement, displacement of non-Navajo employees, back-pay, front-pay, in-junctive relief, mandated corrective action and/or upon a finding of intentional violation, imposition of civil fines. Based on the plain language of the NPEA, the Commission has no discretion to label a particular violation “harmless” and decline to issue a remedy. The NPEA requires the Commission to deal with all violations of the statute properly before it, and issue an appropriate remedy. However, though the Commission must issue some remedy for all violations, contrary to Toledo’s argument, the Commission does not have to compensate the employee for those violations. This Court in Sells v. Rough Rock Community School, No. SC-CV-32-04, 2005 WL 6235867 (Nav.Sup.Ct.2005) found that a NPEA violation that had no bearing on an employee’s situation did not require the award of damages to that employee. Id., at 6 Am. Tribal Law at 653-54, 2005 WL 6235807, *4-5. Here, the lack of an affirmative action plan or workforce report does not affect Toledo’s wrongful termination claim (which, even if it did, the Court has decided his claim has no merit). Bashas’ NPEA violations do not directly relate to Toledo’s termination and therefore, even if the Commission appropriately reviewed those violations, the NPEA does not require the Commission to award him damages.
VI
Based on the above, the Court AFFIRMS the decision of the Navajo Nation Labor Commission.

. Indeed, Bashas' notice of termination to Toledo does not mention its sexual harassment policy, but instead, adopting reasons stated in a separate disciplinary memorandum, cites "unwelcome sexual related conduct and behavior by persistently suggesting of a sexual nature [sic] to start a love affair with a Bashas member Sheila Hardy that ended 4 years ago[,][a]lso by physically touching her breast while on company time," Member Conference Memorandum, April 29, 2004.