*DILCON NAVAJO WESTERNER/TRUE VALUE STORE*
Respondent-Appellant
*vs.*
*Shirley JENSEN*
Petitioner-Appellee

In the Supreme Court of the Navajo Nation

No. SC-CV-52-98

May 26, 2000

James Jay Mason, Esq., Gallup, New Mexico, for Appellant.

Patterson V. Joe, Esq., Flagstaff, Arizona, for Appellee.

Before YAZZIE, Chief Justice, and AUSTIN and SLOAN, Associate Justices.

Opinion delivered by AUSTIN, Associate Justice.

On June 30, 1998, the Navajo Nation Labor Commission ("Commission") found that Dilcon Navajo Westerner/True Value Store ('Dilcon") terminated Shirley Jensen ("Jensen") in violation of the Navajo Preference in Employment Act ("NPEA"), 15 N.N.C. 5 604(B)(8) (1995). Dilcon appeals. We affirm the Commission's decision.

## I

Jensen was employed as a manager of Dilcon, which is located in Dilcon, Navajo Nation (Arizona). Michael Nelson ("Nelson") owns and operates the store. Conflicts had arisen between Nelson and Jensen regarding Jensen's management of the store in 1995. However, no incidence of unsatisfactory management or disciplinary actions occurred in the year preceding the June 17, 1996 incident at issue in this case.

The incident at issue began when Nelson learned that Jensen reprimanded an employee for gossiping in the store about her husband's alleged infidelity. A third employee relayed Jensen's reprimand to Nelson and characterized it as Jensen probing into the private lives of employees. In response, Nelson became very upset and called Jensen at work on June 17, 1996 and ordered her to leave the store immediately. Nelson did not state oral or written reasons for taking this adverse action against Jensen. The parties met on June 19, 1996 and Nelson ordered Jensen to take the following week off from work. Again, Nelson failed to tell Jensen the reasons for taking adverse actions against her. On June 22, 1996, Nelson faxed a letter to Jensen officially placing her on suspension without pay. The letter did not explain the reasons Jensen was being suspended, but that reasons for the suspension would be given to Jensen following Nelson's return from a trip to Chicago. Jensen responded with a request for a meeting with Nelson to discuss the suspension. A reply from Nelson dated June 30, 1996 again failed to state reasons for Jensen's suspension, and only indicated that a meeting would be scheduled at a later date.

On July 5, 1996, Nelson sent a letter to Jensen outlining the reasons for her suspension in terms of personnel policy violations cited in the employee manual. The reasons included interfering with other employees, making false statements about other employees, failing to follow job instruction, and insubordination. Nelson's letter to Jensen also stated that the charges against her included an incident that occurred in March 1995, which he alleged also violated personnel policy.

After further communications between the parties in an attempt to reconcile, Nelson sent Jensen a Reinstatement Agreement to return to work on August 5, 1996. Jensen did not agree with several of the Reinstatement Agreement's provisions, including those which called for a three year probationary period, an admission of guilt to the charges, and a consent to termination if necessary. Jensen notified Nelson that she would not sign the Reinstatement Agreement calling it "unfair and unreasonable." Nelson replied that Jensen's refusal to sign the Reinstatement Agreement constituted a resignation thereby terminating her employment. At the Commission hearing, Nelson testified that he expected a counter-proposal from Jensen. Jensen testified that she did not intend to resign simply by her refusal to sign the agreement.

At all relevant times, Nelson issued to Dilcon employees an employee

manual entitled "Company Policies, Employment Understanding." Nothing in the manual or Jensen's job description expressly limited its applicability so as to exclude Jensen or store managers. The manual outlined a termination procedure that listed various offenses and respective disciplinary actions. The manual stated that "[t]hree write-ups will be grounds for dismissal" and "[t]he accumulation of any three (3) such written notices ... during any 12 month period is subject to termination. Warnings over 12 months are not used for action under the disciplinary procedure." Nelson applied the manual to Jensen's employment when he sent her letters discussing her behavior in terms of the policies.

On June 9, 1997, Jensen filed a complaint with the Commission, alleging that Dilcon's adverse actions violated the NPEA. The Commission scheduled a hearing to be held on August 4, 1997. On Jensen's motion and the Commission's own motion, the hearing date was moved to September 5, 1997 and then to October 1, 1997. Ultimately, the hearing was held on October 7, 1997, more than sixty days after Jensen filed her complaint. Dilcon, which did not consent to all of the rescheduling, filed a motion to dismiss Jensen's complaint on the ground that a hearing had not been held within sixty days. The Commission denied Dilcon's motion and found in favor of Jensen on the merits of her complaint.

## II

These are the issues on appeal: 1) Did the Commission err by denying Dilcon's motion to dismiss for failure to conduct a hearing within sixty days from the day on which Jensen filed her complaint; 2) Did the Commission err when it ruled that Dilcon violated the NPEA by taking adverse actions against Jensen without just cause and without written notification citing just cause; 3) Were the terms of Dilcon's employee manual binding on the parties, and, if so, did Dilcon adhere to the terms of the manual; and 4) Did the Commission err when it awarded fees and costs to Jensen based on its ruling that Dilcon's position was not substantially justified.

## III

### A. Time Period for Hearing

The first issue on appeal is whether the Commission erred by denying Dilcon's motion to dismiss for failure to conduct the hearing within sixty days from the filing of the complaint. To address this issue, we ask whether the NPEA or the Commission's Rules of Procedure require that hearings be conducted within sixty days of the filing of the complaint.

The NPEA states, "The Commission shall schedule a hearing within sixty (60) days of the filing of a written complaint by a petitioner with the Commission." 15 N.N.C. § 611(A) (1995). The parties differ on the meaning of the statute. Dilcon says the statute requires the Commission to conduct a hearing within sixty days from the filing date. Jensen says the statute simply requires the Commission

to complete the act of scheduling the hearing within sixty days. She maintains that the statute does not require that the hearing be conducted within that time period.

We look first to the plain meaning of the statutory language. If the statutory language is ambiguous, we then examine the statute's legislative history and overall objective. *Navajo Nation Division of Resources v. Spencer*, 5 Nav. R. 109, 111 (Nav. Sup. Ct. 1986). Here, we find that the phrase, "shall schedule a hearing within sixty (60) days," is sufficiently ambiguous to warrant an examination of the statute's legislative history and overall objective.

The 1985 language of present section 611(A) stated: "The hearing shall be held within thirty (30) days of the filing of the formal complaint." *See* 15 N.T.C. § 611(a) (1985). The Navajo Nation Council amended the statute in 1990 so that it now reads: "The Commission shall schedule a hearing within sixty (60) days of the filing of a written complaint." If the Council intended merely to enlarge the time period in which the hearing was to be conducted, it would have simply changed "thirty (30) days" to "sixty (60) days." Instead, the Council enlarged the time period and changed the wording of the statute from "shall be held" to "shall schedule." The most reasonable explanation for the change in wording is a change in meaning.

Moreover, the legislative history of the statute indicates that, in amending it, the Council sought to alleviate the problem under the old law that "[c]ontinuance [was] regularly requested and time for pre-hearing discovery [was] all but non-existent." *See* Report to the Navajo Nation Council Regarding the Proposed Amendments to the Navajo Preference in Employment Act of 1985, prepared by the Navajo Labor Investigative Task Force, September 1990, at 97-98. The Council intended to ensure that the Commission and the parties have sufficient time to prepare for and address cases fully.

In light of the legislative history of section 611(A), we conclude that the statute requires the Commission to complete the act of scheduling a hearing within sixty days of the date of filing, but that the statute does not require the Commission to conduct the hearing within that time period. As such, the Commission did not violate the NPEA by failing to conduct the hearing within sixty days of the day on which Jensen filed her complaint.

Having determined that the Commission did not violate the NPEA, we now ask whether the Commission violated its own Rules of Procedure when it failed to conduct the hearing within sixty-days. *Mustach v. Navajo Board of Election Supervisors*, 5 Nav. R. 115 (Nav. Sup. Ct. 1987) (the election board failed to follow its procedural rules for resolving election contests). Rule 7 of the Commission's Rules states:

> Upon filing of the complaint, the Commission shall promptly set a date for a hearing on the Complaint to be held within 60 days of the filing of the complaint.

Rule 8 provides:

> The Chairperson of the Commission may extend the time for a hearing upon written request of any party filed with the Commission and good cause shown. Before such a request may be approved by the Chairperson, both parties must waive their rights under Section 611.A of NPEA to have a hearing held within 60 days of the filing of the complaint.

Lastly, Rule 15 states, "The Commission reserves the right to modify these rules."

The second sentence of Rule 8 refers to the parties' right under the NPEA to have a hearing held within sixty days of the filing of the complaint. However, as discussed above, the NPEA creates no such right. Thus, the second sentence of Rule 8 is based on an incorrect interpretation of the NPEA. Accordingly, we conclude that the second sentence of Rule 8 is invalid and is of no effect.

Rule 7 requires that the Commission conduct hearings within sixty days of the filing of the complaint. Although the NPEA does not require the Commission to conduct hearings within sixty days, it does not prohibit the Commission from imposing a sixty-day time period on itself. Thus, Rule 7 is valid and enforceable.

However, under Rule 15, the Commission reserved the power to modify its own rules. Agencies may modify their own rules, so long as they do so within the limits of due process and so long as the modifications do not violate the agency's governing, enabling statutes.

Here, the Commission modified the application of Rule 7 by allowing the hearing to be held more than sixty days after the filing of the complaint. In so doing, the Commission did not exceed the limits of due process and did not violate its governing statute. We recognize that in order to fully and fairly protect the interests of all parties that come before the Commission and to ensure that these parties and the Commission have ample time to prepare for hearings, the Commission must be given flexibility to modify the application of the sixty-day restriction of Rule 7. For these reasons, we conclude that the Commission did not violate its own rules by failing to conduct a hearing within sixty days of the day on which Jensen filed her complaint. Accordingly, we affirm the Commission's denial of Dilcon's motion to dismiss.

Today's ruling allows the Commission flexibility in determining when to conduct hearings. However, this flexibility is not without limits. In determining when to hold a hearing, the Commission must respect the due process rights of the parties that come before it. Further, the Commission should consider its own interests and those of the parties in having disputes heard in a timely fashion, but with ample time to prepare for the hearing. Ultimately, the Commission must conduct hearings within a reasonable amount of time from the filing of the complaint, and it may not cause excessive or undue delays in so doing.

## B. Just Cause and Written Notification

The second issue on appeal is whether the Commission erred when it found that Dilcon violated the NPEA by taking adverse actions against Jensen without just cause and without written notification citing just cause. The NPEA requires that

> All employers shall not penalize, discipline, discharge nor take any adverse action against any Navajo employee without just cause. A written notification to the employee citing such cause for any of the above actions is required in all cases. 15 N.N.C. § 604(B)(8) (1995).

In reviewing the Commission's decision that Dilcon violated the NPEA, we note that "administrative adjudicatory bodies have special expertise in the subject matter they administer" and that "[t]he presence or absence of 'just cause' in a particular situation is a factual matter, which is particularly suited to specialized inquiry before the Commission." *Smith v. Red Mesa Unified School District No. 27*, 7 Nav. R. 135, 138 (Nav. Sup. Ct. 1995). As such, the scope of our review of the Commission's decision is limited to inquiring whether the decision was beyond or outside the power of the agency, based upon a mistake as to the applicable law, a violation of civil rights guarantees, not supported by the evidence, or [whether] the procedures [leading to and implementing the decision] were arbitrary and unreasonable. *Navajo Skill Center v. Benally*, 5 Nav. R. 93, 96 (Nav. Sup. Ct. 1986).

First, we ask whether the Commission erred in determining that Dilcon took adverse action against Jensen without just cause. "The term 'just cause' is broad, and it encompasses a wide range of employer justifications for adverse action." *Smith*, 7 Nav. R. at 138. Nonetheless, "just cause" implies that the employer must have fair reasons for taking adverse actions against an employee and that those reasons are supported by the facts of the case.

The incident at issue in this case arose out of Jensen's managerial attempt to prevent gossiping in the workplace. Nelson's reasons for taking adverse actions against Jensen included interfering with other employees, making false statements about other employees, failing to follow job instructions, and insubordination. A review of the record reveals that each of Nelson's reasons is not supported by facts to justify the adverse actions taken against Jensen, including suspension and termination. The record simply shows a store manager's attempt to prevent gossiping among employees escalating beyond reason and resulting in several adverse actions culminating in the manager's termination. In the final analysis, we have a case here of a manager being terminated because she attempted to prevent gossiping in the workplace by her subordinates.

For these reasons, we conclude that the Commission did not err in determining that Nelson violated the NPEA by taking adverse actions against Jensen without just cause. The Commission's decision is supported by the evidence, it was not beyond the agency's power, it was not based upon mistake as

to the applicable law, it did not violate any civil right, and it was not based on any arbitrary or unreasonable procedure.

Although the above discussion is dispositive as to whether Dilcon violated the NPEA, we will analyze the issue of written notification for purposes of completeness. Accordingly, we ask whether the Commission erred when it decided that Dilcon violated the NPEA by failing to give Jensen written notification citing just cause for the adverse actions taken against her.

"Our law requires employers to advise employees, in writing, of the reasons for terminating an employee's employment." *See Smith*, 7 Nav. R. . at 137. "The statement of just cause ... prevents employers from making *ad hoc* justifications for employee terminations" and helps to protect the employee's "valuable individual property right" in employment. *Id.* In order to ensure that the purposes of the written notification requirement are fulfilled, the notification must be meaningful. Therefore, we rule today that the written notification must be reasonably clear in its language and contain facts that would support the adverse action. The notice must be provided to the employee contemporaneously with the adverse action to guard against "*ad hoc* justifications." *Id.*

A review of the record in the present matter reveals that the Commission did not err in determining that Dilcon failed to provide Jensen with sufficient written notification. The relevant communications between Jensen and Nelson were limited to 1) a telephone conversation in which Nelson told Jensen to leave the store but failed to provide reasons for asking her to do so, and 2) written communications which failed to cite just cause and were delivered to Jensen nearly three weeks after the initial adverse action was taken.

For the above reasons, we conclude that the Commission did not err in determining that Dilcon violated the NPEA by terminating Jensen without just cause and by taking adverse action against Jensen without written notification citing just cause.

### C. Employee Manual

The third issue on appeal is whether the terms of Dilcon's employee manual were binding on the parties, and, if so, whether Dilcon adhered to the terms of the manual. This issue arises because, in its decision, the Commission stated that Dilcon "failed to adhere to its Personnel Policies ...." Order dated June 30, 1998 at 10. We note that the Commission did not rely exclusively on Dilcon's failure to adhere to the employee manual. Further, our own review of the Commission's just cause determination was based on factors separate and apart from issues related to the employee manual. As such, the following discussion regarding the employee manual is not dispositive of the issues presented in this case.

Under certain circumstances, employee manuals and other such policy statements create mutually binding agreements between employers and employees. An employer's presentation of an employee manual to a prospective or existing employee may operate as an offer, subject to acceptance by the

employee's commencement or continuation of employment duties. Upon acceptance, the parties promise to be bound by the terms of the manual, and the employer promises that the terms of the manual will be enforced during the employee's employment. Further, when an employer acts pursuant to the terms of the manual, the employer creates and reinforces the employee's reasonable expectations that the manual's terms are binding upon the parties and that they will be followed fairly and consistently. In such situations, the employee's reasonable expectations merit legal protection. *See, e.g., Simplot v. No-Chunk Nation Dep't of Health*, 23 ILR 6235, 6240 n.8 (Ho-Chunk Tribal Ct., 1996) (holding that personnel policies and procedures create employee expectations of continued employment and obligate the employer to follow enumerated termination policies).

In the present matter, we conclude that the terms of Dilcon's employee manual were binding upon the parties. Nothing in the manual expressly excluded Jensen from its application. The manual required a signature and, also, contained at least two liability releases, one of which specifically required a signature. Jensen's signature does not appear in the manual. Further, the manual included an agreement that the employee submit to lie detector tests at the owner's request.

Moreover, Nelson's letters to Jensen discussed her alleged behavior in terms of the manual and indicated that her possible termination was being reviewed in accordance with the manual. As such, it was reasonable for Jensen to expect that the manual's terms were binding upon the parties and that Nelson would adhere to the terms fairly and consistently. Specifically, Jensen reasonably expected that Nelson would abide by the manual's termination procedures, which stated that three write-ups would be grounds for dismissal and that no disciplinary warnings over one year old would be used against employees in decisions regarding termination. Nelson departed from these procedures.

For these reasons, we conclude that the employee manual created mutual obligations between the parties and that Jensen had a reasonable expectation that Dilcon would abide by the terms and procedures set forth in the manual. Nelson breached those obligations and Jensen's expectancy interests by attempting to alter the procedures provided for in the manual and ultimately denying the manual's applicability to Jensen.

We are mindful of the economic impact of our interpretive rulings of the NPEA. Interpreted too strictly, the NPEA might discourage business owners and employers from locating their operations on the Navajo Nation. Today's ruling should not have this effect, as the ruling is merely a common-sense extension of the protections afforded by the NPEA. The NPEA prevents unjustified terminations by requiring just cause and written notification. Through employee manuals, employers may set forth termination procedures to help ensure that the NPEA's requirements are fulfilled.

## D. Attorneys' Fees and Costs

The final issue on appeal is whether the Commission erred in awarding attorneys' fees and costs to Jensen because Nelson's position was not "substantially justified." *See* 15 N.N.C. § 612 (A) (2). Section 612 (A)(2) states as follows: "If, following notice and hearing, the Commission finds that respondent has violated the Act [the NPEA], the Commission shall: ... award costs and attorneys' fees if the respondent's position was not substantially justified." We construe this section to do two things: 1) It gives the Commission discretion to make a determination on whether to award to the employee costs and attorneys' fees; and 2) It places the initial burden on the employer to prove its litigating position was substantially justified to avoid paying the employee's costs and fees. Thus, this Court will give deference to the Commission's decision on costs and fees and review that decision using an abuse of discretion standard.

In this case, the parties did not suggest what substantially justified may mean, so we will not address that question here. Nonetheless, we believe the Commission is in a superior position than this Court to determine whether an employer's litigating position is substantially justified after sorting through the myriad of factors before it. Accordingly, we affirm the Commission's decision on its award of costs and attorneys' fees.

IV

The Commission's decision is affirmed. Jensen's request for attorney's fees and costs on appeal is denied.