OPINION

This ease concerns whether, in a proceeding before the Navajo Nation Labor Commission, an employer may present evidence justifying the termination of an employee that it discovered after it issued a notice of termination to the employee. The Court holds that, for purposes of calculating damages, the Commission should have allowed such evidence, and therefore erred.
I
Diñé College (College) terminated Bernice Casaus, the dean of its Shiprock branch campus, through a notice of termination issued on February 7, 2003. Almost immediately after issuing the termination notice, the College President learned through other employees of additional alleged misconduct by Casaus. The College issued a second termination notice to her on March 18, 2003 based on the new allegations of misconduct.[1]
Casaus filed a charge with the Office of Navajo Labor Relations (ONLR), alleging that the College violated the Navajo Preference in Employment Act by terminating her without “just cause.” See 15 N.N.C. § 604(B)(8) (2005). The record is silent on whether Casaus included the second notice of termination in her charge.[2] Based on its investigation, ONLR issued a “right to sue” letter to Casaus on December 5, 2003. The parties did not include the letter in the record, and the record is silent on whether ONLR knew of or investigated the allegations made in the second notice of termination. Casaus filed a complaint with the Commission on June 12, 2004. Casaus attached only the first notice of termination to her complaint.
The College twice attempted to admit evidence to the Commission concerning the allegations in the second termination notice. The Commission rejected both attempts, accepting Casaus’ argument that this Court’s decisions prohibit the introduction of the new allegations. Based on the evidence it did allow, the Commission determined that Casaus’ termination violated the NPEA and entered a judgment awarding back pay. The College appealed that decision to this Court. The Court heard oral argument on September 21, 2006.
II
The issue in this case is whether the Commission erred when it did not allow *511 evidence of a terminated employee’s alleged misconduct that was discovered after the employer issued a notice of termination, when the employer issued a second notice of termination informing the employee of that alleged misconduct before the employee filed a charge with the Office of Navajo Labor Relations, and when the employee did not attach the second notice to her complaint filed with the Commission.
III
The Court reviews Commission decisions for an abuse of discretion. Yazzie v. Took Dineh Industries, 6 Am. Tribal Law 806, 808, 2006 WL 6168954, *2 (Nav.Sup.Ct.2006) One type of abuse is an error of law. Toledo v. Bashas’ Diné Market, 6 Am. Tribal Law 796, 797-98, 2006 WL 6168967, **1-2 (Nav.Sup.Ct.2006). The Court reviews questions of law de novo, with no deference given to the Commission. Id. Whether the Commission was required to allow evidence on the second termination notice is a question of law.
IV
The College argues that the Commission erred when it rejected evidence on Casaus’ misconduct identified in the second termination notice. The College does not appeal the Commission’s decision that Ca-saus’ termination was illegal; the College concedes that it violated its own personnel policies and procedures when it issued the first termination notice.[3] Instead, the College asserts that the additional justifications for termination require a reduction of thé monetary damages the Commission awarded Casaus.
Both parties frame the issue in this case as whether it is appropriate for this Court to adopt the doctrine of “after acquired evidence.” The College argues that this Court should adopt this doctrine as articulated by the United States Supreme Court in the case of McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Casaus objects, stating that the “after acquired evidence” doctrine is inapplicable because the NPEA requires contemporaneous notice of the grounds for termination, and the employer is bound by those grounds. According to Casaus, the employer may under no circumstances amend its previous notice of termination after the first notice is issued, and therefore may not introduce other reasons before the Commission.
The Court frames the issue in a different way. As the Court sees it, the issue in this case is whether Casaus, the terminated employee, can restrict the evidence to be considered by ONLR and the Commission by submitting only the first notice of termination in the initial charge and in the complaint. In other words, are ONLR, the Commission, and the employer bound by what the employee submitted with her charge and complaint, when additional evidence the employee was aware of, but did not submit, might affect the employer’s liability or the employee’s award?
In recent NPEA cases this Court has balanced the due process rights of the employee and employer so that the Commission may receive all relevant information, but so that the parties are not un-
*512 fairly surprised by new claims or new defenses not disclosed during the NPEA dispute process. In Hood v. Navajo Department of Headstart, the Court held that an employee was bound by the claims made in his ONLR charge and complaint filed with the Commission, and neither the employee at the hearing nor the Commission in its decision could assert new and different reasons for the proposition that the employer violated the NPEA. 6 Am. Tribal Law 721, 722-23, 2006 WL 6168349, **2-3 (Nav.Sup.Ct. 2006). In Toledo v. Bashas’ Diné Market, the Court refined the holding of Hood to allow the employee to present a defense to an employer’s argument that there was “just cause” for termination, even though the employee did not bring up that defense in his complaint. 6 Am. Tribal Law at 796, 798, 2006 WL 6168967, *2 (Nav.Sup.Ct.2006). Also in the context of an employer’s arguments on “just cause,” the Court in Manygoats v. Atkinson Trading Co. held that an employer is bound by the reasons stated in its notice of termination, and may not later present different reasons to the Commission. 4 Am. Tribal Law 655, 664-65, 2003 WL 25794039, *7 (Nav.Sup.Ct.2003); see also Smith v. Red Mesa, 7 Nav. R. 135, 137 (Nav.Sup.Ct.1995). That prohibition prevents the employer from “ad hoc” justifications, that is, from fabricating its reasons for termination after the fact. Manygoats, 4 Am. Tribal Law at 665, 2003 WL 25794039, *8. Further, it ensures that the employee knows the reasons for the termination and therefore has the opportunity to take legal action. See id. The ultimate question is how to apply these principles to the present case.
While on the surface this case appears to be governed by Manygoats, the facts are different in several critical ways, and compel a different result. First, Ca-saus was aware of the additional reasons for the termination by the second notice of termination before she filed a charge. Second, the College was unaware of the additional alleged misconduct at the time it issued the first notice, and therefore could not have included it in the first notice.[4] Finally, and most critically, though Casaus was aware of the second notice, and the reasons included in that notice, she did not disclose to the Commission the existence of the notice or the additional reasons given by the College.[5] In Manygoats, the employer gave the employee one notice of termination, and provided no clear reasons. 4 Am. Tribal Law at 664, 2003 WL 25794039, **6-7. It did not attempt to issue a second notice until after the employee filed a charge with ONLR, and therefore for the first time informed the employee of its alleged reasons after the NPEA dispute process began. Id. Indeed, this Court concluded that the employee had to file her charge with ONLR simply to find out why the employer terminated her. Id. The employee had no notice at all of the purported reasons before the charge, and the Court therefore concluded the employer could not present them to the Commission. Id. at 664-65, 2003 WL 25794039, **7-8.
*513 Under the circumstances oí this case, the Court holds the Commission should have allowed the College to present its evidence on the second termination notice. When the employer did not know of conduct justifying an employee’s termination before it issued a termination notice, and when the employee was given notice of that conduct before filing a charge, the employer should be allowed to present evidence of that conduct to the Commission. Casaus could not be unfairly surprised that the College would present this evidence, as she was informed soon after the original termination of the alleged misconduct. Also, the College’s additional reasons were not “ad hoc” justifications, as it was unaware of the alleged additional misconduct until after it issued its first notice. Under such circumstances, Casaus’ due process rights are not in jeopardy, as she was aware before filing her charge that the College alleged additional misconduct.[6] Further, failure to account for misconduct might mean Casaus would receive more compensation than the College would otherwise be liable to pay, a result inconsistent with the Navajo concept of nályééh. See Allstate Indemnity Co. v. Blackgoat, No. SC-CV-15-01, slip op. at 6-8 (Nav. Sup.Ct.) (discussing concept of nályééh as intended to adequately compensate the injured party and make them whole so that there are “no hard feelings”). Indeed, allowing the College to present its evidence to reduce Casaus’ damages is consistent with Navajo concepts of fault, by apportioning fault so that the College is responsible lor its wrongiul conduct, but is not held responsible for Casaus’ conduct. See Benally v. Mobil Oil Corp., 4 Am. Tribal Law 686, 691-92, 2003 WL 25794036, **4-5 (Nav.Sup.Ct.2003) (discussing Navajo concept of fault as consistent with büagáana concept of comparative negligence). Finally, the Court will not undermine the comprehensive resolution of a dispute between employer and employee by allowing the employee to withhold evidence from the Commission. In Navajo the concept is expressed as “ná bináheezláago bee t’áá tahj>í algha’ deet’>á,” Navajo Nation v. Kelly, 6 Am. Tribal Law 772, 776, 2006 WL 6168966, **3-4 (Nav.Sup.Ct.2006), and under this concept an employee who files a charge and complaint may not keep relevant evidence on his or her conduct from ONLR and the Commission, and then object when the employer brings that evidence to the Commission’s attention.[7]
IV
Based on the above, the Court VACATES the damage award to Casaus and REMANDS the ease for further proceedings to review the allegations in the second notice and decide whether damages should be reduced based on that misconduct. The main question presented to the Commission on remand is whether Casaus did in fact commit misconduct that would otherwise establish “just cause” for termination, and, if so, what amount of damages would fairly compensate Casaus for the *514 initial wrongful termination, but not reward her for her wrongful conduct. One possibility is to award damages from the time of the first notice of termination to the time the College issued the second notice. The Court leaves the application of these principles in the first instance to the Commission.

. The second notice was akin to an amendment of the first notice. The President indicated in the second notice that all of the reasons for the termination would be available to the College’s grievance committee proceeding. The record does not show whether Casaus actually took advantage of this grievance process; thus, there is nothing in the record indicating whether or not the second termination notice was considered in any grievance process.

. The Court assumes that Casaus never submitted the second termination notice to ONLR. This is a reasonable assumption given Casaus' strenuous objection to any reference to the second notice during the Commission hearings.

. The Court assumes that this is the reason why the College referred to and attached only the Commission’s Final Order to its Notice of Appeal. The Final Order deals only with damages. It is assumed that the College made this decision because it was not appealing the earlier Commission order which concluded that: the College had violated the NPKA. The Court, therefore, will not review the Commission’s conclusion that the termination was illegal.

. Casaus does not dispute the College’s assertion that it was unaware of the additional alleged misconduct until after the first notice of termination, when employees came forward and reported the misconduct to the College President.

. As discussed above, infra, slip op. at 2, the record does not show whether Casaus disclosed the ⅛-econd notice to ONLR, but she clearly did not attach the second notice to her complaint with the Commission or otherwise notify the Commission of the existence of the second notice.

. The failure to submit the second notice to ONLR renders ONLR’s investigation and its decision to issue a right to due letter meaningless in this case. All NPEA processes designed to resolve the dispute should be followed and fulfilled with the frank participation of the parties. See 15 N.N.C. § 610 (2005) (discussing powers and responsibilities of ONLR to investigate charges and seek conciliation and settlement of claims).

. Of course, this concept applies equally to the employer when it issues a notice of termination. However, as discussed above, the College simply did not know of the additional reasons at the time it issued its first termination notice, and therefore did not withhold such information from Casaus.