OPINION

The Navajo Nation appeals from a judgment of the Office of Hearings and Appeals (OHA) that dismissed alleged violations of the Navajo Nation Personnel Policies Manual (Personnel Manual) against an employee. OHA dismissed NNEPA’s charges of unauthorized absence and excessive absenteeism for lack of evidence and further dismissed a charge of insubordination for lack of notice. We conclude that OHA abused its discretion and therefore reverse the OHA.
I
Iris Shirley Begaye was employed as a Senior Environmental Specialist with the Navajo Nation Environmental Protection Agency (NNEPA) from May 22, 2000 to October 13, 2006. NNEPA terminated Begaye’s employment on October 13, 2006 after it imposed the maximum penalty of removal pursuant to the Personnel Manual [1] for her third charge of unauthorized absence (Table of Penalties, Offense # 25) and her third charge of excessive absenteeism, including tardiness (Table of Penalties, Offense # 26), NNEPA listed 46 incidents of unexcused or insufficiently explained absences from September 23, 2004 to September 29, 2006 as the basis for the discharge.[2] On October 20, 2006, Begaye filed a written request for reconsideration of her discharge in accordance with the grievance procedures outlined in the Personnel Manual. A reconsideration meeting was scheduled by NNEPA. At the reconsideration meeting of October 27, 2006. NNEPA provided Begaye with an amended termination notice that stated no new facts but grouped 34 of the 46 unexcused absences to support the second charge of excessive absenteeism, grouped the 12 remaining unexcused absences to support the third charge of excessive absenteeism, and added a charge of insubordination (Table of Penalties, Offense # 23), a fourth violation, concerning the previously documented November 10, 2005 unauthorized absence as another reason for her discharge. The November 10, 2005 incident is where Begaye requested leave and *340 was denied, then was absent without justification on the day in question.
Upon Begaye’s grievance, the matter proceeded through the administrative process without settlement resulting in an administrative hearing before OHA on February 8, 2007. On April 17, 2007 OHA dismissed NNEPA’s charges of unauthorized absence and excessive absenteeism for lack of evidence and dismissed the charge of insubordination for lack of notice. It was further ordered that Begaye be reinstated with back pay and her disciplinary record expunged. NNEPA appealed this decision to this Court on May 15, 2007. A hearing was held on July 15, 2009 in Window Rock. This decision now follows.
II
The issues are (1) whether the Navajo Nation, in accordance with its Personnel Manual, can issue an amended notice of termination with new justifications 13 days after an employee’s initial notice and actual termination, and after the employee has initiated grievance; (2) whether the Personnel Manual mandates an employer to take disciplinary action against an employee immediately after each incident of unauthorized absence, rather than permitting an employer to document an employee’s “pattern” of misconduct; and (3) whether 46 absences, warranting disciplinary action for the offense of unauthorized absence, can also warrant disciplinary action for the offense of excessive absenteeism.
III
A decision of OHA is a final administrative decision that is appealable to this Court. The Court reviews decisions of OHA under an abuse of discretion standard. Begay v. King, 8 Am. Tribal Law 148, 150-151 (Nav. Sup.Ct.2009). An administrative body abuses its discretion when it makes an erroneous legal conclusion or if its factual findings are not supported by substantial evidence. Legal conclusions are reviewed de novo. Id.
IV
NNEPA argues that OHA erred in dismissing the charges of unauthorized absence and excessive absenteeism against Begaye for lack of evidence. Second, NNEPA argues that OHA erred in dismissing the charge of insubordination against Begaye for lack of notice. Aside from these arguments, NNEPA contends that OHA also erred in failing to consider the lack of respect shown by Begaye toward her employer as such actions relate to k’e.
A
Before we address each argument, we must first address the underlying issue of whether the Navajo Nation, in accordance with its Personnel Manual, may issue an amended notice of termination with new justifications after an initial notice and discharge, and after an employee has initiated grievance. It is well-established that enforcement of the personnel policy manual between employer and employee is paramount to employment law on the Navajo Nation. See, e.g., Toledo v. Bashas Dine Market, 6 Am. Tribal Law 796 (Nav.Sup.Ct.2006) (Bashas’ sexual harassment policy enforced); Milligan v. NTUA, 6 Am. Tribal Law 731 (Nav.Sup.Ct.2006) (NTUA’s layoff policy enforced); Smith v. Navajo Nation Dept. of Head Start, 8 Nav. R. 709, 6 Am. Tribal Law 683 (Nav.Sup.Ct.2005) (Navajo Nation’s leave policy enforced); Dilcon Navajo Westerner v. Jensen, 8 Nav. R. 28, 2 Am. Tribal Law 502 (Nav.Sup.Ct.2000) (Navajo Westerner’s termination policy enforced). An employer’s personnel manual is a contract *341 between employer and employee with justifiable expectations that both parties will follow it to maintain harmony in the workplace. Smith, 8 Nav. R. at 714-715, 6 Am. Tribal Law 683 (citing Dilcon Navajo Westerner, 8 Nav. R. at 40, 2 Am. Tribal Law 502).
Although case law is clear that the personnel manual is the contract that shall be followed, the Navajo Preference in Employment Act (NPEA) is the general labor code protecting all employees within the Navajo Nation. See Staff Relief v. Polacca, 8 Nav. R. 49, 57, 2 Am. Tribal Law 512 (Nav.Sup.Ct.2000). An employer’s personnel manual is required to comply with the requirements of the NPEA and may, in certain circumstances, afford employees greater protection. Because Navajo Nation employees may challenge their termination using the administrative process set forth in the Personnel Manual (like in the case before us) or may file directly with the ONLR, see Smith v. Navajo Nation Dept. of Head Start, 8 Nav. R. 709, 6 Am. Tribal Law 683 (Nav.Sup.Ct.2005) (case where Navajo Nation employee filed complaint with Navajo Nation Labor Commission), we find it necessary to examine the language of the Personnel Manual together with the NPEA and its developing case law where provisions of the manual are silent to discourage forum shopping.
The NPEA prohibits employers from discharging any employee without just cause. 15 N.N.C. 604(B)(8) (2005). A written notification to the employee citing such cause is required. Id. Likewise, Section XIII of the Personnel Manual states all disciplinary actions (including terminations), shall be documented in writing, directed to the employee, hand delivered whenever practicable or sent by certified mail, and shall contain:
1. an appropriate identification of the party, including position title and department; and
2. the date(s) on which the violation(s) occurred, or where such acts are of a continuing nature and are the basis for the disciplinary action, the period of time when the acts occurred; and
3. a reference to the Table of Penalties regarding the offense(s) committed and the penalty imposed; and
4. a clear and concise statement of the facts constituting the alleged violation(s); and
5. an explanation of the employee’s right to appeal the disciplinary action pursuant to Section XIV Employee Grievance; and
6. if hand delivered, the employee’s acknowledgment of receipt of the notice, or if employee refuses to acknowledge, the notation that the employee refused to sign and the date.
Section XIII.F, Contents of Disciplinary Notice, Personnel Manual (September 1, 1994). Affording greater protection, the content requirements of the Personnel Manual are more detailed than NPEA’s requirement to “cite such cause.” Furthermore, the Personnel Manual establishes a right in the employee to appeal disciplinary actions. See Section XIII.F.5 and XIV.A, Personnel Manual. The Personnel Manual, however, is silent as to amendments of disciplinary notices.
We therefore review NPEA case law as to the purpose and sufficiency of notice before we consider amendments of disciplinary notices. The purposes of the written notice, an element of due process, are to inform the employee of the basis for adverse action and to allow that person to pursue legal remedies with an understanding of what facts the employee must address. Smith v. Red Mesa Unified Sch. Disc No. 27, 7 Nav. R. 135, 137 *342 (Nav.Sup. Ct. 1995). If the employee does not know why adverse action is taken, both due process and the NPEA are violated. Id. Once the employer has provided reasons for the termination, “it is bound by them and cannot come forward with new justifications.” Id. (emphasis added). See also Dilcon Navajo Westerner, 8 Nav. R. 28, 39, 2 Am. Tribal Law 502 (Nav.Sup. Ct.2000) (prevent ad hoc justifications); Manygoats v. Atkinson Trading Co., 8 Nav. R. 321, 338, 6 Am. Tribal Law 761 (Nav.Sup.Ct.2006) (no ad hoc justifications); Jackson v. BHP World Minerals, 8 Nav. R. 560, 569, 5 Am. Tribal Law 446 (Nav.Sup.Ct.2004) (reiterates ruling against ad hoc justifications). Because the Personnel Manual requires the Navajo Nation to give written notice and further specifies the elements of that notice to expound reasons so the employee, as a right, can defend against those reasons, we hold the Navajo Nation, like all other employers, is bound by the reasons it provides in the termination notice given to the employee at the time of discharge and may not later provide ad hoc justifications.
Where an amended termination notice was permitted by this Court, we clarified that additional reasons presented in a second termination notice were not “ad hoc ” justifications where the employer was unaware of the alleged additional misconduct until after it issued its first notice. Casaus v. Dine College, 7 Am. Tribal Law 509, 513 (Nav.Sup.Ct.2007), In Casaus, the employer issued an amended termination notice after learning of additional misconduct by Casaus and before Casaus filed her charge with the Labor Commission. Here, NNEPA was not unaware of the alleged additional misconduct of insubordination at the time it issued its first notice. In fact, NNEPA relied on the previously disclosed November 10, 2005 unauthorized absence (where Begaye requested leave and was denied, then failed to report to work on the day in question) to support its charge of insubordination. Furthermore, NNEPA simply grouped certain previously disclosed incidents of unexcused absences to substantiate its simultaneous second and third charges of excessive absenteeism. We therefore conclude the amended termination notice, issued 13 days after the initial notice and after Be-gaye initiated grievance, violated Begaye’s due process rights, the NPEA, and the Personnel Manual. The Court will therefore consider the legal arguments herein with regard only to the first termination notice of October 13, 2006.
B
Like the OHA, we now address each ground for termination in turn. NNEPA, in its initial termination notice of October 13, 2006, discharged Begaye for her third charge of unauthorized absence (offense # 25). OHA dismissed the charge for two reasons. First, it stated it cannot uphold the charge because “NNEPA did not comply with Section XIII.F [Contents of Disciplinary Notice]” of the Personnel Manual thereby denying Begaye specific information as to when the alleged offenses occurred and an opportunity to prepare a response to the allegations. Final Order, 2, April 17, 2007. In particular, OHA found that NNEPA did not specifically or sufficiently state when violations of unauthorized absences occurred and when excessive absenteeism occurred. NNEPA, on the other hand, asserts the termination notice delivered to Begaye complied with the letter and spirit of Section XIII.F of the Personnel Manual. Accordingly, we compare the October 13, 2006 notice with the requirements of Section XIII.F, supra section IV.A, to determine if OHA erred in Its legal conclusion that NNEPA failed to comply with the contents requirement of the Personnel Manual.
*343 NNEPA, in its disciplinary notice, produced a list of 46 separate incidents of unexcused or insufficiently explained absences that occurred during the last 2 years of Begaye’s employment as grounds for termination. According to OHA, the “46 listed absences are due to Begaye’s arriving late to work in the mornings, calling in the morning to inform the NNEPA staff that she would be late, not showing up for work and not calling in, returning late from lunch, spending time with personal visitors, and for time spent on the phone for personal conversations.” Final Order at 5. Begaye does not dispute the factual allegations. Specifically, NNEPA first identified the period of time when the acts occurred (a period of 23 months beginning September 23, 2004 to September 29, 2006), then listed each incident by date, further documenting the actual time (to the exact minute) of the absence, provided a short statement of the facts constituting the alleged violation, and indicated the number of hours for which leave without pay was assessed. We therefore conclude the October 13, 2006 termination notice provided to Begaye at her termination complied with Section XIII.F. of the Personnel Manual. We further conclude any one of these grouped unauthorized absences would have warranted Begaye’s removal. OHA erred in its legal conclusion that NNEPA failed to comply with the contents requirement of the Personnel Manual.
Second, OHA concluded that it cannot uphold the termination because NNEPA failed to comply with the disciplinary provisions of the Personnel Manual. NNEPA, according to OHA, failed to immediately impose (or provide “evidence” of) and consistently take disciplinary actions against Begaye for any unauthorized absences prior to September 29, 2006. The Personnel Manual however gives the employer considerable discretion. It states the disciplinary notice shall contain:
the date (s) on which the violation(s) occurred, or where such acts are of a continuing nature and are the basis for the disciplinary action, the period of time when the acts occurred;
Section XIII.F.2, Personnel Manual (September 1, 2004) (emphasis added). Where such acts are of a continuing nature, this provision allows an employer to document the period of time when the acts occurred-meaning an employer may document an employee’s “pattern” of misconduct. We therefore hold the Personnel Manual does not require an employer to take disciplinary action against an employee immediately after each alleged offense, rather it permits an employer to document an employee’s “pattern” of misconduct. An employer therefore should not be penalized for withholding disciplinary action and opting instead to apply progressive discipline. Likewise, an employee should not take advantage of an employer’s progressive discipline policy and demand endless opportunities to correct deficiencies. An employer may keep record of violations of a continuing nature, establish a “pattern” of employee misconduct, before it decides enough is enough.
Furthermore, the record reveals that Begaye had been warned, counseled, or spoken with on many occasions regarding the seriousness of her problem with unauthorized absences and possible consequences, including discharge. Specifically, Begaye was counseled by her supervisors on April 11, 2006, July 18, 2006, and August 29, 2006 to address her history of poor attendance and unexcused absences. Begaye also received two correspondences on April 13, 2006 and July 18, 2006 from her supervisor addressing concerns of excessive leave without authorization and tardiness, and imposing leave without pay *344 as a consequence. In addition, NNEPA submitted Begaye’s entire 6 years of employment history showing a long trail of charges of excessive absenteeism and insubordination.[3] Begaye also received poor annual performance ratings as to dependability with a most recent notation in 2005 that read “frequently absent from work and/or tardy.” Final Order at 7. Begaye however failed to heed all warnings. In its effort to diligently document each occurrence without disciplinary action after each incident, NNEPA demonstrated patience and a willingness to work with Begaye before it ultimately terminated Begaye; NNEPA acknowledged it may have been too lenient for too long in taking disciplinary action.
NNEPA further argues that OHA erred in failing to consider Begaye’s lack of respect, contrary to k’e (mutual respect), toward her employer as justification for the disciplinary action taken against Begaye. Her lack of dependability as a government employee and her failure to abide by the Personnel Manual and to treat the concept of “leave” with respect, according to NNE-PA, justified disciplinary action. Begaye does not deny the validity of any of the incidents NNEPA had listed. Rather, she argues that she was docked time unfairly for receiving visitors, taking personal calls, and being tardy to work and therefore she had additional leave hours available to her when she was later denied leave but took it anyway. She further claims that NNE-PA has not produced any evidence of a documented policy explaining that it was the practice that such incidents would be considered leave and docked from an employee’s accrued leave. We disagree with Begaye’s assertions. It was within the prerogative of the NNEPA, according to its policies,[4] to make such a judgment.
*345 Here, NNEPA chose not to strictly impose leave without pay. Begaye’s accrued leave was charged whenever possible. Either wray, Begaye w7as charged for the actual hour(s) she arrived late to work or from lunch, the nearest hour(s) spent receiving visitors—one visit lasted an hour and 45 minutes, and the nearest hour(s) or total time spent taking personal phone calls—one call lasted an horn- and 35 minutes. We are also not persuaded by Be-gaye’s other argument that the Personnel Manual was so unclear that she was left to guess as to wrhat was expected of her and why she was disciplined. Quite frankly, we agree with NNEPA that Begaye demonstrated a lack of respect for her employer and her job, and disregarded her duties and obligations delineated in the Personnel Manual. OHA failed to take this into consideration. NNEPA, in its actions of progressive discipline and k’e, persistently counseled Begaye and informed her that her excessive leave and tardiness was negatively impacting her job performance and their federal funding. NNEPA’s decision to terminate was clearly explained and reasonable. Thus, OHA erred in its legal conclusion that NNEPA failed to comply with disciplinary provisions of the Personnel Manual. We therefore find OHA abused its discretion w7hen it dismissed the charge of unauthorized absence. We reverse the OHA and uphold the charge of unauthorized absence and its third penalty of removal.
C
NNEPA also discharged Begaye for excessive absenteeism, including tardiness (offense # 26). OHA reversed the charge because Begaye’s termination notice violated “the requirements set out in sertion XV.C.l[5] [Discharge of Employee]” of the Personnel Manual. Final Order at 19. OHA concluded that both notices—though we’re concerned with only the first—“are not specific as to which days Begaye was absent or tardy for work in order to afford her an opportunity to prepare a response to the allegation.” Id. Second, OHA concluded that it cannot assume that the dates listed to support the offense of unauthorized absences are also the dates supporting the charge of excessive absenteeism because NNEPA, pursuant to Section XIII.G.9, cannot take multiple disciplinary actions against an employee for the same conduct or event.
We first address OHA’s legal conclusion that Begaye’s termination notice violated Section XV.C.l, Discharge of Employee, of the Personnel Manual because it lacked specificity between an absence and a tardy. Although OHA fails to explain why such a distinction is necessary considering both specifically amount to excessive absenteeism per the Personnel Manual, we examine the October 13, 2006 termination notice on this ground. Upon review of the notice, the Court finds that NNEPA provided enough details in its documentation that one can reasonably distinguish an absence from a tardy from the list of unauthorized absences; these details are sufficient for an employee to formulate a response. For example, it is clear that “[o]n December 21, 2004, you were late to work. You were absent for two hours without seeking prior authorization” is a tardy. Termination Notice, Appellant’s Br„ Ex. 1 at 3, October 13, 2006. NNE-PA similarly documented 25 other tardies amounting to a total of 40 hours. OHA became unnecessarily concerned with the *346 notion that a tardy should be distinguished from an absence and failed to take the comprehensive view that absences without authorization, including tardies, can become excessive after a certain point. OHA therefore erred in its legal conclusion that NNEPA violated the discharge of employee provision of the Personnel Manual.
Next, we address OHA’s decision that it cannot uphold NNEPA’s charge of excessive absenteeism because it cannot assume that the dates that support the offense of unauthorized absences also support the offense of excessive absenteeism. Even if it did make such an assumption, OHA. simply states (without explanation) that NNEPA would be violating Section XIII.G.9 [Table of Penalties] of the Personnel Manual. Section XIII.G.9 provides “[e]mployees shall not be penalized for multiple offenses arising from the same conduct or event.” NNEPA, on the other hand, asserts Be-gaye was not being punished multiple times for the same conduct. It asserts that “[t]here were simply different legal theories, different ways of looking at the same conduct that justified the discharge.” Appellant’s Br. at 16. We agree with the NNEPA.
An absence without authorization, prompting a charge of unauthorized absence, cannot warrant a separate charge of excessive absenteeism; however, absences of a continuing nature may warrant an additional charge of excessive absenteeism without violating the rule against multiple punishments. It is the cumulative and repeated nature of committing the same offense that warrants a separate penalty. For instance, in July 2003 Grievance Hearing Officer Nez, under similar circumstances involving Begaye, held ten unauthorized absences, including tardies, constituted excessive absenteeism.[6] Such individual determinations, on a ease-by-case basis, with reasonable explanation to the employee are appropriate. Furthermore, an employer may also consider other absences without prior authorization, whether later charged to accrued leave or not, in its determination of excessive absenteeism.
Rather than to adopt a cumulative standard for determining excessive absenteeism and absent a set policy by an employer, we consider on a case-by-case basis several factors, including but not limited to: length of employment, when absences (unauthorized and, in certain situations, later approved absences) including tardies began, how often absences occur, later justifications if any, disciplinary actions imposed, counseling afforded to employee, employee improvements, and any negative impacts to the employer’s operation.
Here, Begaye was employed for six years and established an extensive history of disciplinary actions for excessive absenteeism and insubordination dating back to 2001, not long after her effective date of employment. Within two years of her removal, she accumulated 46 unauthorized absences—aside from the 165 approved absences ’—which resulted in her termination on October 13, 2006. NNEPA counseled Begaye on April 11, 2006, July 18, 2006 and August 29, 2006 to address her unexcused, excessive absences. Be-gaye. however, demonstrated no improvement and shortly after her counseling on August 29, 2006, she resumed unauthorized absences that same day, August 30, *347 2006, September 8, 2006, September 21, 2006, September 26, 2006, September 27, 2006 and September 29, 2006. NNEPA also noted that Begaye’s “attitude and actions threaten federal funding.” Termination Notice, Appellant’s Br,, Ex. 1 at 11, October 13, 2006. Under these circumstances, NNEPA was justified in its decision to charge and discipline Begaye for excessive absenteeism although we find this to be her second documented charge. OHA therefore abused its discretion when it dismissed the charge of excessive absenteeism.
V
Based on our reasoning above, the Court finds OHA abused its discretion. The Court hereby REVERSES OHA’s decision of April 17, 2007 and reinstates Begaye’s termination for unauthorized absence.

. The Court takes judicial notice that the September I, 2004 version of the Navajo Nation Personnel Policies Manual was in effect at the time of Begaye’s termination.

. From the record, the Court notes the 46 unexcused (or disapproved) absences herein are distinguished from the Begaye's "approved" absences. During the same two year period of concern, Begaye submitted 165 leave slips (some documenting absences, including tardies, without application for leave) which were subsequently approved by her supervisors. Of the 165 leave requests, a total of 757 hours were charged as follows: 472 hours charged to accrued annual leave, 242 hours charged to accrued sick leave, and 43 charged as leave without pay. Respondent’s Ex. B.

. The termination notice pertained to events from September 23, 2004 to September 29, 2006. Prior to that, the record reveals the following. On October 9, 2001 Begaye was reprimanded for her failure to comply with directives and show courtesy and cooperativeness with coworkers. On December 18, 2001 Begaye received a 3-day suspension for her first violation insubordination (offense # 23)—she abruptly left her performance evaluation without approval—and for her violation of failure to complete performance evaluation as required (offense # 28) in which she received the lowest possible rating regarding punctuality and cooperation with others. Thereafter Begaye, on April 25, 2002, received a 5-day suspension for her second violation of insubordination when she left a meeting in which her supervisor attempted to discuss her violations of excessive absenteeism. On May 2, 2003 Begaye received a total 35-day suspension without pay for third violation of insubordination (30-day suspension in lieu of termination), her first violation of egregious misconduct (offense # 14), and her first violation of excessive absenteeism and tardiness (5-day suspension)(offense # 26). Begaye was also instructed to seek assistance from the Navajo Nation Employee Assistance Program and receive anger management before returning to work. Begaye appealed the 35-day suspension, wherein the Navajo Nation Personnel's Grievance Hearing Officer affirmed the decisions to suspend Begaye for third violation of insubordination and a first violation for excessive absenteeism noting "a recurring pattern” of reporting late and taking unauthorized or unapproved leave. Resp’t’s Ex. M at 6-7.

. Leave is granted a privilege, not a right. See Section X.A. 1, Personnel Manual, September I, 2004, "Employees will earn annual and sick leave, however, when and how these leave benefit are used is subject to supervisory approval. Employees should keep in mind that the use of leave is granted as a privilege rather than a right. St should also be clearly understood that leave is granted to employees at such times as they can be conveniently spared from work.” Section X.A. 1. Furthermore, "[wjhen an employee is absent without authorization, the employee will be charged with absence without approved leave and may be subject to disciplinary action. If the absence is later approved, the charge to absence without approved leave may be changed to the appropriate leave.” Section X.C.2.

. A supervisor shall notify the employee, in writing, of the discharge and the specific reasons for the discharge. The notice shall in-elude all requirements of Section XIII.F. Contents of Disciplinary Notice. Section XV.C.l, Personnel Manual, September 1, 2004.

. Findings of Fact and Conclusions of Law and Order, In re Suspension of Iris S. Begaye, No. 03-3-045-EP (Navajo Nation Personnel Department July 30, 2003). Resp’t's Ex. M.