OPINION

The law firm of Rosenfelt & Buffington, P.A. (Appellant) appeals the determination of the Navajo Nation Labor Commission (Commission) that Appellant had terminated the employment of Marlene Johnson (Appellee) without just cause in violation of the Navajo Preference in Employment Act (NPEA). Appellant further appeals the Commission’s award of damages to Appel-lee. The Court reverses for the reasons set forth below.
I
BACKGROUND
Appellee was employed as the lone receptionist in the Shiprock satellite office of Appellant, the law firm of Rosenfelt & Buffington, P.A. On August 29, 2006, Appellant terminated Appellee for failing to abide by the law firm’s policies regarding telecommunications, client relations, staff morale and office decorum, and performance of tasks which were contained in the law firm’s written policy manual and its written telecommunication policies. Specifically, Appellee was fired for sending emails containing sexually offensive matters, making demeaning comments about other staff and clients undermining staff morale and office decorum, being rude and unhelpful to visitors and clients, and failing to perform assigned tasks properly. Appellee filed a complaint before the Commission challenging the termination. Following an evidentiary hearing on the merits, the Commission issued its Findings of Fact, Conclusions of Law and Interim Order on February 7, 2008, finding that Ap-pellee was terminated without just cause. After the Commission considered Appel-lee’s damages statement and having heard Appellant’s objection, the Commission issued a Final Order on May 14, 2008 awarding Appellee damages in lost wages, vacation leave, job search, traditional healing expenses, and attorney fees and costs.
The Commission found that Appellee was informed numerous times over a period of eight months by Appellant via personal meetings and e-mail of how her conduct at work was not acceptable. The meetings and e-mails specifically described each instance that Appellee was insolent and further informed her that such conduct undermined staff morale. The Commission agreed that each ground cited by the firm for the termination violated multiple provisions of the law firm’s policy manual and the written telecommunications policies. Nonetheless, the Commission invalidated the termination on the following bases: (1) none of the Appellee’s actions *88 could be deemed “outrageous conduct” pursuant to the law firm’s personnel policies manual; (2) Appellant failed to apply progressive disciplinary measures prior to the termination; and (3) consequently, no just cause for termination was established by the requisite preponderance of evidence.
The firm timely appealed the Commission’s final order on June 9, 2008. The Court issues this decision based on the record, having determined that oral argument is unnecessary.
II
JURISDICTION
Jurisdiction for this Court to hear appeals from decisions of the Commission for violations of the Navajo Nation Preference in Employment Act is pursuant to 15 N.N.C. § 613.
III
STANDARD OF REVIEW
 The Court generally reviews the decisions of a quasi-judicial administrative agency under an abuse of discretion standard. Manygoats v. Atkinson Trading Co., 8 Nav. R. 321, 336, 4 Am. Tribal Law 655 (Nav.Sup.Ct.2003). However, the Commission’s decision in this case involved a legal conclusion that violations of the NPEA did not rise to “outrageous conduct” and were insufficient to serve as the just cause basis for termination. The Commission’s legal conclusion is subject to de novo review “with no deference given to the Commission’s interpretation of the law.” Wauneka v. Navajo Nation Department of Law Enforcement, 10 Am. Tribal Law 19, 22 (Nav.Sup.Ct.2011) citing Tso v. Navajo Housing Authority, 8 Nav. R. 548, 555, 5 Am. Tribal Law 438 (Nav.Sup.Ct.2004).
IV
ISSUES
The sole issue in this case is whether an employee’s continued violations of an employer’s written policies following numerous meetings and communications initiated by the employer provided just cause for termination pursuant to its personnel policies manual and the NPEA, when each separate violation may not arise to substantial misconduct, each and in itself.
V
REPEATED OFFENSES
The factual findings are not in dispute. The Commission concluded that Ap-pellee’s persistent violations, despite the months of meetings and emails initiated by the employer, were violations but none of the violations rose to the level of “outrageous conduct” justifying termination. Appellant asserts that pursuant to their personnel policy manual (manual), “outrageous conduct” was never the standard for disciplinary action concerning repeated offenses, and that it acted within its discretion under the terms of the manual and Navajo law.
The Court has long held that “A personnel manual is a contract between employer and employee, with justifiable expectations that both employer and employee follow it to maintain harmony in the workplace.” Smith v. Navajo Nation Dept. of Head Start, 8 Nav. R. 709, 714, 6 Am. Tribal Law 683 (Nav.Sup.Ct.2005) citing Dilcon Navajo Westerner v. Jensen, 8 Nav. R. 28, 40, 2 Am. Tribal Law 502 (Nav.Sup.Ct.2000).
Appellant’s policy manual states:
Employee conduct that violates accepted standards will not be tolerated. The Firm may give reasonable warnings to *89 employees whose conduct falls below the norms, and employees are expected to demonstrate immediate and continued improvement with respect to the problems that generate such warnings. Repeated offenses, or a single instance of outrageous conduct, will lead to termination.
Section 6.04(1) Law Firm Policy Manual, Tenth Revised (May 1999) (emphasis added).
The Court has emphasized in our case-law that the personnel manual is the contract that shall be followed, so long as the manual complies with the NPEA, which is the general labor code protecting all employees within the Navajo Nation. See, e.g., Begaye v. Navajo Nation Environmental Protection Agency, 8 Am. Tribal Law 336, 340-41 (Nav.Sup.Ct.2009) citing Staff Relief v. Polacca, 8 Nav. R. 49, 57, 2 Am. Tribal Law 512 (Nav.Sup.Ct.2000). It is clear that the above section of the Appellant’s manual provides that “repeated” violations or even a single “outrageous” violation of the manual and other written policies may be of such a serious nature that they may serve as a just cause basis for an employer to terminate an employee. The Court reads the section as imposing a minimum obligation on the employer to provide notice to the employee that the employee’s conduct is below acceptable standards, and to convey its expectations to the employee concerning necessary corrective action. In effect, the section provides a k’é mechanism to deal with employee conduct that violates workplace standards, which this Court has previously suggested is a proper mechanism to be used in employer-employee disputes. See Kesoli v. Anderson Sec. Agency, 8 Nav. R. 724, 6 Am. Tribal Law 692 (Nav.Sup.Ct.2005).
In Begaye, supra, the Navajo Nation’s personnel policies manual gave the employer considerable discretion in addressing violative acts of an employee of a continuing nature. In that case, the court held that where the manual does not require an employer to take disciplinary action against an employee immediately after each alleged offense but provides for alternative methods of notice and warning, the employer should not be penalized for withholding disciplinary action. Id. at 343. The Court stated that “[ljikewise, an employee should not take advantage of an employer’s progressive discipline policy and demand endless opportunities to correct deficiencies. An employer may keep record of violations of a continuing nature, establish a “pattern” of employee misconduct, before it decides enough is enough.” Id.
Just cause is determined on a case-by-case basis considering the facts of each case. Smith v. Navajo Nation Dept. of Head Start, 8 Nav. R. 709, 714, 6 Am. Tribal Law 683 (Nav.Sup.Ct.2005) citing Smith v. Red Mesa, Unified School District No. 27, 7 Nav. R. 135, 138 (Nav.Sup.Ct.1995); see Dilcon Navajo Westerner v. Jensen, 8 Nav. R. 28, 38, 2 Am. Tribal Law 502 (Nav.Sup.Ct.2000). Just cause is broad, encompassing a wide range of employer justifications for adverse action, however, it is implied that the employer must have fair reasons for taking adverse actions against an employee and that those reasons are supported by the facts of the case. Dilcon Navajo Westerner v. Jensen, 8 Nav. R. 28, 38, 2 Am. Tribal Law 502 (Nav.Sup.Ct.2000). The Court has further stated that not all employee misconduct will meet the standard for just cause; the misconduct must be substantial. See Manygoats v. Atkinson Trading Co., 8 Nav. R. 321, 338, 4 Am. Tribal Law 655 (Nav.Sup.Ct.2003). The inquiry doesn’t end simply because an employer’s manual permits termination for “repeated” violations after warnings have been given. The re *90 peated violations must rise to substantial misconduct. In this case, the Commission failed to consider whether or not cumulative misconduct, each instance of which may be considered minor, may meet this “substantial” standard.
Appellant is a small law firm operating a small reservation satellite office in Shi-prock manned by a lone receptionist miles and hours away from a supervisor. Appel-lee has been provided extensive in-house training on the way the lone receptionist is to greet and treat prospective clients, as Appellant asserts that the demeanor of the receptionist is critical to developing the firm’s business. Additionally, any insolence by the receptionist undermines staff morale. These are, no doubt, business-related reasons for requiring conformance with the law firm’s written policies.
That Appellee’s insolent demeanor continued over the course of numerous months despite sustained k’é measures— where she was told the gravity of her violations and expected to be self-accountable—has not been disputed. Appellee’s continued violations after she had been conveyed the critical importance to the employer’s business of her conforming her conduct to the policies, showed a deliberate violation of the employer’s standards after repeated warnings. While each of Appellee’s violations may not have been so serious, we find that the cumulative effect—repeated violations of multiple provisions of the law firm’s policies—were serious, constituting substantial misconduct that meets the standard for just cause under the NPEA. Therefore, we hold that there was just cause for termination pursuant to the NPEA on this basis, and the Commission erred.
VI
K’É MEASURES
When Appellant made its concerns about Appellee’s violations known to Appellee over the course of eight months through personal meetings and emails without imposing punishments, Appellant undertook a course of action in keeping with the Diñé Fundamental Law, which emphasizes personal accountability through talking out, self-knowledge and self-correction. The Court notes that the situation presented to us also shows how little respect is accorded k’é measures by an employee when the employer undertakes such measures without also imposing punishments or threats of punishments. The employment workplace is where the people on the Navajo Nation now spend the larger share of our days in earning a living. This case illustrates that the societal change from family self-sufficiency (working independently to provide for one’s family) to wage earning (working for someone else) appears to have changed the perspective of some regarding the basic tenet of our culture that an individual voluntarily corrects errant conduct out of respect for others.
Unfortunately, self-accountability has not been smoothly translated to the modern workplace of employers, employees, paychecks and disciplinary sanctions. Appellee’s actions show a belief, apparently relying on an interpretation of how employment laws have evolved in our sister jurisdictions, that workplace violations require no corrective actions by an employee unless the employer has made a threat of future sanctions. While this state of workplace relationships may be acceptable in bilagaana, jurisdictions, it is not the Diñé way, nor will our laws support such a purely adversarial interpretation of employer-employee responsibilities to each other in the workplace when disputes occur.
In this Court’s view, the employer’s efforts at counseling over eight *91 months without also imposing reprimands or other punishments conforms to the Diñé objective of restoring relationships. The Diñé method of dispute resolution is averse to threats of punishment in relationships, while emphasizing accountability and personal responsibility, on the basis of self respect, self-awareness and respect for others. T’óó ák’e’jidlíigo, ch’ééh hach’\’ yáti’go, or avoiding personal responsibility by not acting on what you have been counseled, is to give way to ádü jidlfygo ak’íjidi’dootjü, acting maturely and responsibly through self-respect and respect for others. Traditionally, values in Diñé society are transmitted through oblique methods of speaking that emphasizes vol-untariness. In the traditional way, the person requiring action would say that something needs to be done and leave it up to the person to whom they are speaking to take action. For example, one would simply be told that an animal is not getting enough feed in the place it is in, or there is not enough firewood, or some behavior is causing disharmony. The person being spoken to would be expected to understand that he or she is responsible to take action and make the decision to correct the situation themselves.
The Court finds that in cases where an employer’s personnel policies manual permits a k’é alternative to progressive sanctions as in this case, such measures undertaken by an employer (in which the employee is informed of his or her violative acts, and is asked to be self-accountable by self-correcting the violations without also being imposed threats of sanctions) may be used in place of reprimands, oral or written, in the Navajo Nation employment context. The Court further states uncategorically that k’é measures are desirable and even preferred in Navajo Nation employment relations policies, and may even be utilized in lieu of progressive discipline in appropriate circumstances. Essentially, any measures—k’é or progressive discipline—must be fundamentally fair to employees by ensuring that they are fully aware of the standards of conduct expected of them and are treated fairly and consistently should a violation occur.
VII
CONCLUSION
For the foregoing reasons, the Court hereby REVERSES decisions of the Commission dated February 7, 2008 and May 14, 2008. The Court VACATES that portion pertaining to damages. The Court ORDERS that each party shall be responsible for their own costs and attorney fees.